WILLIAM T. GRAHAM, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF EDWARD GERALD LACKEY v. THE NORTHWESTERN BANK

No. 7221SC603

(Filed 25 October 1972)

1. **Rules of Civil Procedure § 56— motion for summary judgment — question presented**

   On the hearing of a motion for summary judgment, it is not the duty of the court to decide an issue of fact but rather to determine whether a genuine issue of material fact exists; where the facts of the case are plain and unambiguous, their effect is a question of law for the court.

2. **Uniform Commercial Code § 79— notice of public sale of collateral — substantial compliance with statute**

   A notice of public sale of securities pledged as collateral for six notes substantially complied with the requirements of G.S. 25-9-602 where it listed and described all of the securities pledged as collateral for each of the six notes, although one of the security agreements was not referred to in the notice and two of the security agreements were referred to by incorrect dates.

3. **Uniform Commercial Code § 79— public sale of collateral — commercial reasonableness — presumption**

   The public sale of collateral by the secured party is conclusively presumed to be commercially reasonable when the secured party has substantially complied with the procedures set forth in part 6 of Article 9 of the North Carolina Uniform Commercial Code, G.S. 25-9-601 *et seq.*, notwithstanding allegations by the debtor of inadequate and unreasonably low prices. G.S. 25-9-601.

APPEAL by plaintiff from *Gambill, Judge,* 17 April 1972 Session of Superior Court held in FORSYTH County.

Plaintiff trustee appeals from what purports to be a summary judgment against the plaintiff, dismissing plaintiff's action for injunctive relief to restrain the sale of pledged securities and for damages caused by the alleged improper sale and disposition of certain other securities by defendant, The Northwestern Bank (Northwestern).

The bankrupt, Edward Gerald Lackey (Lackey), owned certain stocks which were pledged to the defendant in order to secure a total indebtedness to defendant of some $300,500, represented by six paper writings each intended to act as a note and security agreement. Five notes were made by Lackey and dated 6 December 1968, 29 December 1969, 9 February 1970, 15

February 1970, and 27 February 1970. A sixth note dated 19 March 1970, containing the same security agreement, was made by Parrish Dray Lines, Inc., and endorsed by Lackey.

On 13 November 1970 defendant sent a Notice of Sale by certified mail to Lackey and on the same date posted the Notice of Sale at the courthouse in Wilkes County, North Carolina. The Notice of Sale referred to security agreements between bankrupt and defendant dated 6 December 1969, 2 February 1970, 15 February 1970, 27 February 1970 and 19 March 1970.

The Notice of Sale made no reference to the security agreements between bankrupt and defendant dated 6 December 1968, 29 December 1969, 9 February 1970, or to a subsequent pledge of collateral on 27 May 1970, further securing the 6 December 1968 note. However, the Notice of Sale listed by way of description all of the securities pledged as collateral for each of the six notes and described in those six notes.

Pursuant to the Notice of Sale, defendant sold at public auction in Wilkes County on 20 November 1970 all of the securities described in the Notice of Sale. Defendant purchased at this sale all the blocks of securities offered for sale, except for one block of stock. Thereafter, at private sale on 17 December 1970, defendant resold a portion of the securities which it had purchased at the 20 November 1970 sale and gave Lackey full credit on his indebtedness for the total value of the money received at the private sale.

After the foregoing sale and credits, Lackey remained indebted to defendant in the sum of $63,772.34.

On 18 December 1970, Lackey filed a petition in bankruptcy in Federal District Court, and on 22 December 1970, he was adjudged bankrupt. On 7 January 1971, plaintiff William T. Graham was appointed Trustee in Bankruptcy, and on 18 January 1971, plaintiff qualified as Trustee and posted bond.

Plaintiff sets forth in his verified complaint allegations to the effect that the public sale of stock by Northwestern was for inadequate and unjustifiably low prices, and that the sale amounted to a fraud on Lackey's creditors. However, subsequent to the filing of this action, plaintiff and defendant consented to an order by the trial court providing for further private sale of the securities presently retained by Northwestern and the application of those proceeds to the $63,772.34 deficiency.

*Billings & Graham by William T. Graham for plaintiff appellant.*

*W. G. Mitchell for defendant appellee.*

MALLARD, Chief Judge.

In the judgment entered by Judge Gambill herein there appears, among other things, a conclusion as a matter of law "That there is no genuine issue as to any material fact and the defendant is entitled to Summary Judgment as a matter of law." We hold that this judgment, although it does not contain language expressly doing so and was inexpertly prepared, was sufficient to dismiss the case upon defendant's motion for summary judgment, and that plaintiff had the right to appeal therefrom.

[1] On the hearing of a motion for summary judgment, it is not the duty of the court to decide an issue of fact but rather to determine whether a genuine issue as to any material fact exists. *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971) ; G.S. 1A-1, Rule 56. But where the facts of the case are plain and unambiguous, their effect is a question of law for the court. *Sales Co. v. Plywood Distributors,* 13 N.C. App. 429, 185 S.E. 2d 737 (1972).

[2] Plaintiff assigns as error the trial court's conclusion as a matter of law that there was no genuine issue as to any material fact. Plaintiff contends that an issue of fact exists as to whether defendant Northwestern's Notice of Sale "substantially" referred to the security agreements pursuant to which the sale of securities was held.

Under G.S. 25-9-501, Northwestern had the rights and remedies granted under part 5 of Article 9 [G.S. 25-9-501, et seq.] of the Uniform Commercial Code, as well as those provided in the security agreement except as the security agreement was limited by subsection (3) of G.S. 25-9-501. In each of the security instruments involved in this proceeding, it was provided that the collateral could be sold without advertisement or notice, at public or private sale, and that Northwestern could become the purchaser. Northwestern, as it had the right to do, notified Lackey that it would sell the securities at public sale. [See G.S. 25-9-504(3) and part 6 of Article 9 (G.S. 25-9-601, et seq.) of the Uniform Commercial Code.]

G.S. 25-9-504(3) provides in part:

"* * * Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale* . . . shall be sent by the secured party to the debtor. . . . The secured party may buy at any public sale . . . ." (Emphasis added.)

G.S. 25-9-601 provides in part:

"Disposition of collateral by public proceedings as permitted by § 25-9-504 may be made in accordance with the provisions of this part. * * *"

G.S. 25-9-602 provides in part that:

"The notice of sale shall *substantially:* (a) Refer to the security agreement pursuant to which the sale is held . . . ." (Emphasis added.)

G.S. 25-9-603 provides in part that:

"(1) In each public sale conducted hereunder, the notice of sale shall be posted on a bulletin board provided for the posting of such legal notice, in the courthouse, in the county in which the sale is to be held, for at least five days immediately preceding the sale.

(2) In addition to the posting of notice required by subsection (1), the secured party or other party holding such public sale shall, at least five days before the date of sale, mail by registered or certified mail a copy of the notice of sale to each debtor obligated under the security agreement . . . ."

In the defendant Bank's Notice of Sale, posted on the bulletin board for posting legal notices in the Wilkes County Courthouse more than five days immediately preceding the date of sale and sent by certified mail to the debtor more than five days before the sale, the reference to the security agreements pursuant to which the sale was to be had was by dates. Due to clerical error, two security agreements were referred to by improper dates. The one dated 6 December 1968 was apparently referred to in error as being dated 6 December 1969. The one dated 9 February 1970 was apparently referred to in error as being dated 2 February 1970. The one dated 29 December 1969,

which was for $14,000, and was secured by "(a)ll collateral held by bank (D/T) 4 (O/C) collateral held with NH-H 56500," was not mentioned or referred to in the Notice of Sale.

On the other hand, defendant's Notice of Sale listed by way of description all the securities pledged as collateral to defendant and securing all six of plaintiff's notes payable to defendant, including the one omitted and the two erroneously referred to.

Plaintiff contends that the Notice of Sale, therefore, was not in substantial compliance with the provisions of G.S. 25-9-602.

In *Douglas v. Rhodes,* 188 N.C. 580, 125 S.E. 261 (1924), dealing with the requirements for notice of sale under former G.S. 45-25, re-enacted as former G.S. 45-21.16(4) [which was substantially re-enacted as G.S. 25-9-602 insofar as it relates to disposition of collateral at public proceedings], defendant Trustee under a deed of trust advertised for sale the real property secured but failed to set out in the notice a metes and bounds description. Holding that the Trustee's description of the land as "the Melton-Rhodes Company or the Rhodes Company factory and consisting of about 6.75 acres" was a "substantial" compliance with the statute, the Court said:

> "* * * The word 'substantially,' Webster defines to mean: 'In a substantial manner, in substance, essentially.' It does not mean an accurate or exact copy. The purpose and intent of the statute was to give complete and full notice to the public of the land to be sold, so that the public generally would know and understand from the advertisement the exact property offered for sale."

To the same effect, see *Peedin v. Oliver,* 222 N.C. 665, 24 S.E. 2d 519 (1943); *Blount v. Basnight,* 209 N.C. 268, 183 S.E. 405 (1936).

In the case at bar, although two of the dates were incorrectly stated in the Notice of Sale as references to security agreements pursuant to which the sale was to be held, the Notice of Sale contained an extensive and, for the most part, accurate listing of the securities to be sold, and the description paralleled the description of the securities in the six security agreements pursuant to which the sale was to be held.

The description of the securities to be sold adequately and substantially notified Lackey and any other person who chose to be informed what securities were to be sold and that all of the security interests of Northwestern in these collateral securities were to be foreclosed upon and sold for cash.

There is no contention that the Notice of Sale was not published in accordance with the terms of the statute and security agreement or that Lackey did not actually receive the Notice of Sale of all of the securities. We are of the opinion and so hold that the trial court properly determined as a matter of law that the Notice of Sale was in substantial compliance with G.S. 25-9-602.

It is noted that the Notice of Sale and the Report of Sale both referred to the sale of 23.043 shares of Terminal Warehouse stock, 40.1715 shares of Commercial Auto Corporation stock and 3,900 shares of Tar Heel Financial Corporation stock, whereas the actual amount of stock pledged was 23.052 shares of Terminal, 40.1725 shares of Commercial and 3,940 shares of Tarheel Financial Corporation. Whether the error in the figures is clerical or indicative of an accounting problem is a question which has not been raised in this appeal, and this opinion is not intended to be dispositive thereof.

[3]   Plaintiff further argues that whether the 20 November 1970 public auction sale was "commercially reasonable" and whether defendant "substantially complied" with part 6 of Article 9 of the North Carolina Uniform Commercial Code, G.S. 25-9-601, et seq., are genuine issues of material fact.

G.S. 25-9-504(3) reads in part:

"Disposition of the collateral may be by public or private proceedings and may be by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be *commercially reasonable. * * *"* (Emphasis added.)

G.S. 25-9-601 provides:

"Disposition of collateral by public proceedings as permitted by § 25-9-504 may be made in accordance with the provisions of this part. The provisions of this part are

not mandatory for disposition by public proceedings, but any disposition of the collateral by public sale wherein the secured party has *substantially complied* with the procedures provided in this part (Part 6) shall *conclusively be deemed to be commercially reasonable in all aspects.*" (Emphasis added.)

In other jurisdictions that have not enacted part 6, or similar provisions, to supplement Article 9 of the Uniform Commercial Code, there is much litigation to determine what constitutes commercial reasonableness in the sale or other disposition of collateral. See Annot., 30 A.L.R. 3d 9 (1970). And whether the current or market price of the collateral was realized at public sale has been held to present a triable factual issue on motion for summary judgment. *California Airmotive Corp. v. Jones,* 415 F. 2d 554 (6th Cir. 1969).

North Carolina, however, has by statute created a conclusive presumption of commercial reasonableness if the secured party substantially complies with part 6 of Article 9 of North Carolina's Uniform Commercial Code. Part 6 of Article 9 [G.S. 25-9-601, et seq.] of the North Carolina U.C.C. is not a part of the "Official Text of the U.C.C." but is in effect in North Carolina. Bender's U.C.C. Service, Hart and Willier, Table of State Variations § 9-601 (Rel. No. 6-1971, Matthew Bender & Co.). The procedure therein and the conclusive presumption created by G.S. 25-9-601 appears to be peculiar to North Carolina.

The facts before the court on motion for summary judgment were not in dispute. Holding as we do that the Northwestern Bank substantially complied, as a matter of law, with the requirements in G.S. 25-9-602 for the Notice of Sale, we are constrained to hold as a matter of law that Northwestern substantially complied with the procedures in part 6 of Article 9, and that the sale of the collateral securities, despite plaintiff's allegations of inadequate and unreasonably low prices, was conclusively presumed to be commercially reasonable. G.S. 25-9-601.

The trial court correctly determined that there was no genuine issue as to any material fact. Summary judgment for defendant was properly entered.

Affirmed.

Judges CAMPBELL and MORRIS concur.