ITT-INDUSTRIAL CREDIT COMPANY, Plaintiff v. MILO CONCRETE CO., INC., Defendant v. J. I. CASE CO., Third Party Defendant

No. 7626SC392

(Filed 17 November 1976)

1. **Uniform Commercial Code § 73— installment contract — waiver of defenses against assignee**

    A "waiver of defenses against assignee" clause in a retail installment contract for sale of a concrete pump precluded the buyer from asserting against an assignee of the contract a counterclaim or defense based upon breach of warranty by the seller where the assignee took the assignment for value, in good faith, and without notice of any claims or defenses. G.S. 25-9-206(1).

2. **Uniform Commercial Code § 73— waiver of defenses against assignee clause — effect of assignee's involvement with seller**

    The fact that the assignee of a retail installment contract supplied the contract form to the seller, was the assignee of twelve contracts from the seller over a two-year period, and approved the buyer's credit and financing did not prohibit the assignee from asserting a "waiver of defenses against assignee" clause in the contract in opposition to the buyer's defense and counterclaim based on breach of warranty.

3. **Uniform Commercial Code § 79— public sale of collateral — presumption of commercial reasonableness**

    If a secured creditor disposes of collateral in a manner in substantial compliance with G.S. 25-9-601 et seq., a conclusive presumption of commercial reasonableness in the disposition is created.

4. **Uniform Commercial Code § 79— public sale of collateral — commercial reasonableness — jury question**

    The evidence was insufficient to establish the conclusive presumption of commercial reasonableness in the disposition of collateral where it failed to show whether the notice of sale was in substantial compliance with G.S. 25-9-602 and whether notice was posted at the courthouse as required by G.S. 25-9-603; however, the evidence raised an issue for the jury as to whether the sale of collateral was conducted in a commercially reasonable manner as to "method, manner, time, place and terms."

Credit Co. v. Concrete Co.

5. **Uniform Commercial Code § 79— public sale of collateral — commercial reasonableness — no conclusive presumption — question of fact**

Absent the establishment of the conclusive presumption of commercial reasonablenss in the public sale of collateral by showing that the sale substantially complied with G.S. 25-9-601 *et seq.*, a question of fact remains as to whether the sale was conducted in a commercially reasonable manner under G.S. 25-9-504(3).

6. **Uniform Commercial Code § 79— public sale of collateral — commercial reasonableness — burden of proof**

A creditor suing for a deficiency has the burden of proving that the disposition of the collateral was conducted in a commercially reasonable manner.

7. **Appeal and Error § 49— harmles error in exclusion of evidence**

The erroneous exclusion of testimony as to the cash price of a concrete pump was not prejudicial where a contract showing the cash and time prices had been admitted in evidence and another witness had testified as to the cash and time prices.

8. **Evidence § 48— refusal to accept witness as expert — error**

In an action to recover an amount due on an installment contract executed for the purchase of a concrete pump wherein defendant buyer counterclaimed for breach of warranty, the trial court erred in refusing to accept the seller's area marketing manager as an expert witness on the mechanics of the pump where the witness had previously been responsible for all sales and service of the seller's concrete machinery in thirteen southeastern states; he had spent time on the assembly line of the pump in question, observing it in fabrication and testing; he had presented lectures on the sales and service of the pump; and he was familiar with all types of pumps and was trained in the procedures outlined in the service manual of the pump in question.

9. **Evidence § 36— statements by agent — failure to show scope of agency**

The trial court properly excluded testimony as to statements allegedly made by defendant's agent where there was no showing that the statements were made within the scope of the agent's authority.

10. **Uniform Commercial Code § 20— acceptance of goods — use for five months — act inconsistent with seller's ownership**

The buyer of a concrete pump accepted the pump where defects in the pump were observed at the beginning of its operation but the buyer retained and operated the pump for more than five months, and where the buyer did an act inconsistent with the seller's ownership by attempting to sell the pump after using it for five months; furthermore, a revocation of acceptance was not available to the buyer after the five-month period since revocation must occur within a reasonable time after the buyer discovers the ground for it. G.S. 25-2-606(1); G.S. 25-2-608(2).

**11. Uniform Commercial Code § 21— breach of warranty — action after acceptance of goods**

The buyer of a concrete pump properly brought an action for breach of warranty *after* an acceptance of the pump where it had duly notified the seller of the defect in the pump. G.S. 25-2-714.

**12. Uniform Commercial Code § 20— breach of warranty — value at acceptance — price of sale to third party**

The trial court in an action for breach of warranty of a concrete pump did not err in refusing to instruct the jury that the value of the pump at acceptance must be controlled by the price received by the buyer from its sale of the pump to a third party since the price received for the pump was only some evidence of its value, and this was properly presented to the jury.

**13. Uniform Commercial Code § 15— express warranty — instructions — seller's opinion or commendation of goods**

In an action for breach of warranty of a concrete pump wherein the question was raised as to whether an express warranty was created by the seller's purported statement as to the ability of the pump to handle a particular type of concrete, the trial court erred in failing to give the jury an instruction which would permit a finding that the seller's purported statement was not an express warranty but was merely the seller's opinion or a commendation of the goods within the purview of G.S. 25-2-313(1).

APPEAL by defendant Milo Concrete Co., Inc., and third-party defendant J. I. Case Company, from *Griffin, Judge.* Judgment entered 23 January 1976 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 21 September 1976.

Plaintiff instituted this action to recover from defendant (Milo) the balance allegedly due on a retail installment contract and security agreement executed by Milo to the third-party defendant (Case) and by it assigned to plaintiff.

In its complaint plaintiff alleged: On 27 April 1973 Milo purchased a new TB80 concrete pump with certain attachments and other equipment from Case. Milo executed a contract setting forth that the total sales price was $56,292.23; that Milo paid $7,000, leaving a balance of $49,292.23 payable in thirty-six monthly installments. The contract and security agreement was assigned to plaintiff. Milo has defaulted in making payments and owes plaintiff $40,049.99. Plaintiff asked for judgment for the balance due plus $6,407.99 attorney fees and costs.

Milo filed answer denying that it was indebted to plaintiff. It also pleaded a counterclaim against plaintiff and a third-party action against Case alleging that the concrete pump

Credit Co. v. Concrete Co.

was defective and that it is entitled to recover damages from plaintiff and Case for breach of expressed and implied warranty. Case filed an answer and plaintiff filed a reply denying that there had been any breach of warranty.

Plaintiff presented evidence tending to show: Milo purchased the concrete pump from Case, made a down payment of $7,000 and executed a contract in which it agreed to make monthly payments totaling $49,292.23. Case assigned the contract to plaintiff for $39,800.00 and plaintiff had no knowledge of anything being "wrong" with the contract at the time it was purchased from Case. Milo made five payments and two payments were made by George Kesler, but no payments were made after December 1973. The unpaid balance at the time of default was $40,049.99 and the pump and equipment were repossessed, sold and the net proceeds of the sale were applied on the debt. After crediting Milo with the proceeds of the sale, less expense incurred in repairing the pump prior to the sale and other expenses thereof, the total amount of Milo's debt to plaintiff is $37,109.03. The contract which Milo executed and plaintiff purchased is a standard retail installment contract form supplied by plaintiff to sellers of equipment. Before plaintiff purchases an installment contract it makes an investigation of a buyer's credit and approves a sale before a contract is executed by the buyer.

Milo offered evidence tending to show: Before purchasing the pump employees of Case. represented to Milo's president that a TB80 concrete pump would pump standard 3,000 psi concrete. This type of concrete is cheaper than other types and the fact that a TB80 pump could pump 3,000 psi concrete was one of the main reasons why Milo bought it. The pump did not perform satisfactorily for Milo because the elbows blew off frequently whenever the pump was being used. When the elbows blew off concrete would not move through but would harden inside of the pump. Several months after purchasing the pump Milo sold it to George Kesler, one of its employees. Kesler executed a note to Milo for $7,000 and agreed to assume the unpaid payments on the contract; however, plaintiff refused to approve this arrangement until Kesler had made three payments and Kesler made only two payments before defaulting.

Case offered evidence tending to show: It never warranted that the equipment would pump standard 3,000 psi concrete.

Milo's president asked Frederick Williams, Case's regional sales manager, if it would pump a 3,000 mix and Williams said it would pump a 3,000 "pump mix." A pump mix differs from a standard mix in that it contains more cement and can slide through pipes more easily. After Milo bought the pump, it was returned to Case's place of business on several occasions for repairs and on those occasions it was very dirty. Concrete was splattered over the outside of the pump and the moving parts inside. The elbows were attached to the pump by clamps which must be secured tightly in grooves, and when Milo brought the pump to Case's place of business the grooves had concrete in them.

Other evidence offered and rulings by the trial judge pertinent to the questions presented on appeal are alluded to in the opinion.

Pursuant to peremptory instructions by the court the jury found that plaintiff was a holder in due course. The jury further found that Milo had breached its contract and that plaintiff was entitled to recover $37,109.03 from Milo; that Case had warranted that the pump would pump 3,000 psi concrete, that Case had breached this warranty, and that Milo was entitled to recover $35,000 from Case.

From judgment entered on the verdict and ordering that plaintiff recover $37,109.03, together with $6,007.50 in attorney fees from Milo, and that Milo recover $35,000 from Case, Milo and Case appealed.

*Richard A. Cohan for plaintiff appellee.*

*Mullen, Holland & Harrell, P.A., by Graham C. Mullen, for defendant appellant and third-party plaintiff appellee.*

*Mitchell & Matus, by T. Patrick Matus, for third-party defendant appellant.*

BRITT, Judge.

### APPEAL OF MILO

[1]    Milo contends that the trial court erred in directing a verdict with respect to its counterclaim against plaintiff based on breach of warranty and in instructing the jury that plaintiff was not subject to a defense based on breach of warranty. These contentions are without merit.

Credit Co. v. Concrete Co.

Plaintiff is the assignee of a retail installment sales contract entered into between seller Case and the buyer Milo. This contract contains a valid "waiver of defenses" provision which provides that: "Buyer agrees not to assert against the assignee any defense, offset or counterclaim which he may have against the Seller." G.S. 25-9-206(1) permits a contractual waiver of certain defenses by the buyer by providing:

"Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3). . . ."

We note first that the General Assembly has enacted Chapter 25A, entitled Retail Installment Sales Act, in which G.S. 25A-25 alters the rule as to waiver of defenses against an assignee of a contract in all consumer credit sales. That statute is not applicable in the present case (see G.S. 25A-2), therefore, G.S. 25-9-206(1) is controlling.

Milo argues that plaintiff was not a holder in due course since the contract involved did not meet the requisites of negotiability. Although this argument is correct, plaintiff was still free of all defenses (including breach of warranty) except those that may be asserted against a holder in due course, if plaintiff met the requirements of G.S. 25-9-206(1). In the instant case, the waiver of defenses clause is enforceable since all the evidence showed that plaintiff took the assignment for value, in good faith, and without notice of any claims or defenses.

[2] Milo further argues that plaintiff, by its degree of involvement with the seller Case, was so "inextricably intertwined" in the sales transaction that it is "unfair" to foreclose Milo's defense based on breach of warranty. Milo supports this argument with the evidence that plaintiff supplied the contract form, that plaintiff was the assignee of twelve contracts from seller Case during 1973 and 1974, and that plaintiff approved the customer's credit and financing. We are aware that the arguments made by Milo have been accepted by some courts,

particularly in consumer transactions, in holding that waiver of defense clauses may be unenforceable as against public policy. *Commercial Credit Corp. v. Orange Co. Mach. Works,* 34 Cal. 2d 766, 214 P. 2d 819 (1950) ; *Unico v. Owen,* 50 N.J. 101, 232 A. 2d 405 (1967) ; *Rehurek v. Chrysler Credit Corp.,* 262 So. 2d 452 (Fla. 1972) ; Navin, Waiver of Defense Clauses in Consumer Contracts, 48 N.C.L. Rev. 505 (1970).

Nevertheless, we think that in the commercial setting of the instant case the waiver of defenses clause was effective in cutting off, as to plaintiff, the defense and counterclaim based on breach of warranty. The validity of the statutory provision [G.S. 25-9-206(1)] authorizing the inclusion of waiver of defense clauses has been upheld many times. *First Nat. Bank v. Husted,* 57 Ill. App. 2d 227, 205 N.E. 2d 780 (1965) ; *Beam v. John Deere Co.,* 240 Ark. 107, 398 S.W. 2d 218 (1966) ; *B. W. Acceptance Corp. v. Richmond,* 46 Misc. 2d 447, 259 N.Y.S. 2d 965 (Sup. Ct. 1965) ; *Jennings v. Universal C.I.T. Credit Corp.,* 442 S.W. 2d 565 (Ky. 1969) ; *Cox v. Galigher Motor Sales Co.,* 213 S.E. 2d 475 (W. Va. 1975) ; *Westinghouse Credit Corp. v. Chapman,* 129 Ga. App. 830, 201 S.E. 2d 686 (1973). Milo's attempt to assert a breach of warranty against the plaintiff was effectively waived in the contract, therefore, this contention is rejected.

Milo next contends the trial court erred in refusing to submit to the jury an issue as to whether plaintiff disposed of the collateral in a commercially reasonable manner. We think this contention has merit.

G.S. 25-9-504(3) provides in pertinent part:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the *method, manner, time, place* and *terms* must be *commercially reasonable. . . .* " (Emphasis added.)

[3] To minimize difficulties arising from the quoted statute, our General Assembly has enacted part 6 of Article 9 of the North Carolina Uniform Commercial Code entitled "Public Sale Procedures." If the secured creditor disposes of the collateral in a manner in substantial compliance with G.S. 25-9-601,

et seq., a conclusive presumption of commercial reasonableness is created. *Graham v. Northwestern Bank*, 16 N.C. App. 287, 192 S.E. 2d 109, *cert. denied*, 282 N.C. 426, 192 S.E. 2d 836 (1972); *Hodges v. Norton*, 29 N.C. App. 193, 223 S.E. 2d 848 (1976). These procedures provide for the contents of the notice of sale (G.S. 25-9-602), the posting and mailing of the notice of sale (G.S. 25-9-603), and the postponement of public sale (G.S. 25-9-605), among others. These procedures are not a part of the "Official Text of the U.C.C." and appear to be peculiar to this State. *Hodges v. Norton, supra.*

[4] The evidence presented in this case is insufficient to establish the conclusive presumption of commercial reasonableness provided by G.S. 25-9-601, et seq. Plaintiff's evidence tends to show: The equipment was voluntarily surrendered; approximately $6,000 worth of repairs were made before it could be sold; there were advertising expenses of $8.94 on 4 February 1975, $10 on 31 March 1975, and $18.25 on 10 August 1975; it cost $792 to sell the equipment at auction; and the equipment sold for $9,900 at the auction. Plaintiff's sole witness stated that there were several contacts with Milo "prior to the month of default, and subsequent to that date also." On cross-examination, plaintiff's witness testified that the public sale was held at the Mecklenburg County Fairgrounds in July of 1975. It was shown that plaintiff advertised the sale on several dates and one notice of sale was produced that indicated that the sale would take place on 6 March 1975. On redirect examination plaintiff's witness identified a notice of sale sent by certified mail to Miles Hamrick (Milo's president) advertising a sale to be held on 19 July 1975 and received by Jane A. Hamrick on 8 July 1975. This notice of sale was not introduced into evidence and there is no evidence of its contents. The record does not indicate whether the contents of the notice of sale were in substantial compliance with G.S. 25-9-602, or whether a notice was posted at the courthouse as required by G.S. 25-9-603. The requirements of G.S. 25-9-601, et seq. are neither difficult to comply with nor to prove a trial. Substantial compliance is required and based on the lack of evidence presented in this case, we hold that no conclusive presumption of commercial reasonableness was established.

[5, 6] We recognize that a public sale may be commercially reasonable even though it does not substantially comply with G.S. 25-9-601, et seq. *Hodges v. Norton, supra.* However, absent

the establishment of the conclusive presumption of commercial reasonableness, we think a question of fact remains as to whether the sale was conducted in a commercially reasonable manner under G.S. 25-9-504(3). We also think that under the greater weight of authority a creditor, when suing for a deficiency, has the burden of proving that the disposition of the collateral was conducted in a commercially reasonable manner. *Clark Leasing Corp. v. White Sands Forest Prod., Inc.*, 87 N.M. 451, 535 P. 2d 1077 (1975); *Vic Hansen & Sons, Inc. v. Crowley*, 57 Wis. 2d 106, 203 N.W. 2d 728 (1973); *Mallicoat v. Volunteer Finance & Loan Corp.*, 57 Tenn. App. 106, 415 S.W. 2d 347 (1966); *First Nat. Bank v. Rose*, 188 Neb. 362, 196 N.W. 2d 507 (1972).

[4] In the absence of the establishment of conclusive presumption, the issue of commercial reasonableness requires a factual determination in light of the relevant circumstances of each case. In the present case, a proper issue was raised for the jury as to whether the sale was conducted in a commercially reasonable manner as to "method, manner, time, place and terms." *Clark Leasing Corp. v. White Sands Forest Prod., Inc.*, *supra; Fort Knox Nat. Bank v. Gustafson*, 385 S.W. 2d 196 (Ky. 1964); *Ennis v. Atlas Finance Co.*, 120 Ga. App. 849, 172 S.E. 2d 482 (1969); *California Airmotive Corp. v. Jones*, 415 F. 2d 554 (6th Cir. 1969); *Atlas Constr. Co. v. Dravo-Doyle Co.*, 3 UCC Rep. Serv. 124 (Pa. C.P. 1965). The trial court, therefore, erred when it refused to submit this issue to the jury.

## APPEAL OF CASE

[7] Case contends first that the trial court erred in allowing Milo's president to testify that the value of the pump would have been $56,000 had it performed as warranted, and then excluding his testimony on cross-examination that the cash price of the pump was $46,800. Under the facts in this case, we find no merit in the contention.

We think that evidence showing the cash price was competent on the question as to the value of the equipment as warranted. Nevertheless, any error committed by the court in refusing to allow the testimony was cured by the previous introduction of plaintiff's exhibit #1 which was a copy of the sales contract. This contract, which was properly before the jury, showed the cash price of $46,800 and the total time price of

$56,293.23. Moreover, plaintiff's first witness had already testified as to the cash price and the time price. The prior introduction of this evidence rendered harmless any error in excluding the testimony of Milo's president as to the cash price. 1 Strong, N. C. Index 3d, Appeal and Error § 49.2.

[8]   Case next contends the court erred in excluding the testimony of Fred Williams, an employee of Case, with respect to his background and qualifications and in refusing to accept Mr. Williams as an expert witness. We think this contention has merit.

In *Cogdill v. Highway Comm.*, 279 N.C. 313, 321, 182 S.E. 2d 373, 378 (1971), our Supreme Court said:

. . . An expert witness is one better qualified than the jury to draw appropriate inferences from the facts. Stansbury § 132 states:

"The question, then, in every case involving expert testimony, ought to be, Is *this witness* better qualified than *this* jury to form an opinion from *these facts?* If the answer is Yes, his opinion is admissible whether he is called a 'true expert' or is mildly disparaged by being classified as a 'witness specially qualified as to facts,' or an 'expert on the facts,' or 'not strictly an expert.' "

We note the general rule that the competency of a witness to testify as an expert is a question addressed primarily to the sound discretion of the trial court. *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705 (1972). An expert witness is one who through study or experience, or both, has acquired skill that makes him better qualified than the jury to form an opinion on the subject in question. In the instant case, Mr. Williams was the area manager for the marketing division of Case. He had previously been the regional manager of the concrete division and was responsible for all sales and service of Case's concrete machinery in thirteen southeastern states. He had spent time on the assembly line of the pump in question, observing it in fabrication and in testing. He had presented lectures on the sales and service of this equipment. Outside the presence of the jury he testified that he was familiar with all types of pumps and that he was trained in the procedures outlined in the service manual of this pump. Furthermore, during a normal week, he sees at least one pump a day.

We hold that this evidence was sufficient to qualify Mr. Williams as an expert and the exclusion of this testimony based on the facts in question constituted prejudicial error. The trial court abused its discretion in failing to qualify this witness as an expert. As stated in *Utilities Comm. v. Telephone Co., supra:* ". . . The fact that the witness is an officer or employee, or a consultant specially retained by a party to the litigation, does not disqualify him as an expert. The effect of this circumstance upon the weight to be given his opinion is for the trial body to determine." We think the testimony of Mr. Williams, as an expert, would have been not only proper but also helpful as an aid to the jury in understanding the mechanics and possible malfunctions of the concrete pump in question.

[9] Case next assigns as error the exclusion of certain testimony offered by its witness Mr. Williams relating to declarations of Mr. Kesler, an alleged agent of Milo. This assignment is without merit.

Mr. Williams, as a witness for Case, testified that he was at the Case office in Charlotte when Mr. Kesler, an employee of Milo, came into the office and stated that he was interested in buying a concrete pump. An objection was then interposed and sustained. The jury was excused and Williams testified that Kesler said he wanted a TB80 pump rather than a TB336 pump "because he sold concrete pumps, he had pumped against a TB80 on demonstration, he knew what it would do and he wanted a tandem truck . . . ." Objection was again interposed and sustained. We think the court properly excluded this testimony.

On their face, these statements indicate that Kesler *personally* wanted this concrete pump and, in fact, Kesler later purchased the pump in question from Milo. Case's argument that the statements were made while Kesler was an agent of Milo *and* acting within the scope of his authority is not supported by the record. Conceding that Kesler was the agent of Milo, there was no showing that the statements sought to be introduced were within the scope of authority of the declarant and the burden of so showing is on the party who seeks to introduce the testimony. *Williams v. Highway Commission,* 252 N.C. 514, 114 S.E. 2d 340 (1960). Since there was no showing that these declarations were within the scope of Kesler's authority, the evidence was properly excluded.

Case next contends that the trial court erred in allowing Milo to amend its pleadings to conform to the evidence and thereby pray for damages greater than asked for in the complaint. This contention is without merit and since Case is being awarded a new trial on other grounds, we deem it unnecessary to discuss this contention. Suffice it to say, the amendment was fully authorized by G.S. 1A-1, Rule 15(b).

Case next contends the trial court erred in failing to submit an issue to the jury regarding acceptance and revocation of acceptance of the concrete pump by Milo. This contention is without merit.

G.S. 25-2-606(1) provides:

Acceptance of goods occurs when the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection (subsection (1) of § 25-2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

[10] Milo seeks to assert its claim for breach of warranty under G.S. 25-2-714 after acceptance of the goods. The evidence established that Milo retained the pump for more than five months and had ample time to effectively reject the goods, particularly since the pump's defects were observed at the beginning of its operation. We conclude that Milo's failure to make an effective rejection within the five-month period constituted an acceptance. Moreover, Milo's attempt to sell the pump, after five-months operation, to Kesler constituted an act under G.S. 25-2-606(1)(c) which was inconsistent with the seller's ownership. Furthermore, a revocation of acceptance was not available to Milo after this five-month period of use since, under G.S. 25-2-608(2), "revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . ."

[11]   Milo duly notified Case of the defect, therefore, we think Milo has properly brought this action for breach of warranty *after* an acceptance of the goods. G.S. 25-2-607(3). The pleadings nor the evidence raised any issue as to acceptance or revocation of acceptance.

[12]   Case's next contention is that the trial court erred in its jury instructions relating to the measure of damages recoverable in a breach of warranty action. This contention is without merit.

G.S. 25-2-714(2) provides:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Although, as noted by the comments to the statute, this is not exclusive measure of damages for breach of warranty, the jury in the instant case was properly charged according to the statute. Case argues that the court should have instructed the jury, as requested, that the value of the goods at acceptance must be controlled by the price received by Milo from its sale of the pump to Kesler. The determination of the amount of damages recoverable was properly a question for the jury upon consideration of all the evidence presented. We recognize that the price received for the pump was *some* evidence of its value and this was properly presented to the jury.

[13]   Case contends that the trial court improperly charged the jury with respect to the creation of an express warranty. We think this contention has merit.

It is conceded that what the court charged was correct. However, Case contends that the failure to include in the charge the substance of the last section of G.S. 25-2-313(2) precluded the jury from finding that statements made by Case did not create an express warranty but were merely the seller's opinion or a commendation of the goods.

The court properly instructed the jury under G.S. 25-2-313(1) and concluded by charging under subsection (2) of that statute that: "No particular word or form of expression is necessary to create an express warranty. Nor is it necessary

that the seller use formal words such as warrant or guarantee or that he have a specific intention to make a warranty." Case contends that the court should have charged on the last section of G.S. 25-2-313 (2) which states that " ... an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." We agree with this contention.

Although we recognize that the inclusion of this statement may not be required in all instances, in the present case a factual question was raised as to what was said by Case concerning the performance of the pump. The issue revolved around whether a warranty was created as to the ability of the pump to handle a particular type of concrete. We think the jury could have reasonably determined that the seller's purported statement was merely the seller's opinion or a commendation of the goods under the statute. We hold that a proper charge to the jury under the evidence in this case should have recognized this possibility and included the second portion of the statute quoted above.

We have considered the other assignments of error argued in Case's brief but, finding them to be without merit, they are overruled.

\*    \*    \*

We conclude that the errors in the trial which we have discussed in Milo's appeal and in Case's appeal were sufficiently prejudicial to require a new trial on all issues and it is so ordered.

New trial.

Judges PARKER and CLARK concur.