FIRST UNION NATIONAL BANK OF NORTH CAROLINA, A NATIONAL BANK v. TECTAMAR, INC., A NORTH CAROLINA CORPORATION; GEORGE E. BECKER, JOY D. BECKER, EWALD L. MERTENS, BERTHA H. MERTENS, CLYDE T. GASPERSON, FAYE W. GASPERSON, HAROLD L. COGDILL, FRANK MACHESKY AND JACKIE MACHESKY

No. 7628SC898

(Filed 6 July 1977)

1. **Uniform Commercial Code § 78— sale of collateral — inadequate price**

Testimony that the price paid by the purchaser of collateral was inadequate was insufficient to raise a genuine issue of fact as to whether a foreclosure sale of the collateral was commercially unreasonable. G.S. 25-9-507(2).

2. **Uniform Commercial Code § 78— sale of collateral — application of proceeds — senior liens**

A creditor violated G.S. 25-9-504(1) and (2) by paying off senior liens out of the proceeds of the sale of collateral, and evidence of such violation raised a genuine issue of fact as to the amount the creditor is entitled to recover on a deficiency judgment from guarantors of the note secured by the collateral.

APPEAL by defendants, Tectamar, Inc., George E. Becker, Joy D. Becker, Clyde T. Gasperson, Faye W. Gasperson, and Harold L. Cogdill, from *Martin (Harry), Judge.* Judgment entered 3 June 1976 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 11 May 1977.

Plaintiff brought this action to collect on a note from defendant Tectamar; to enforce a security agreement securing the note; and to enforce the individual defendants' agreement to guarantee payment of the note. On 29 January 1976 the parties agreed to a consent order providing that Tectamar had executed a note and security agreement to plaintiff; that Tectamar had defaulted and was indebted to plaintiff for $45,795.75; that plaintiff was entitled to repossess and sell the collateral; and that plaintiff was entitled to recover $45,795.75, with interest, from Tectamar. In their answer the individual defendants admitted that they had guaranteed Tectamar's note.

Plaintiff moved for summary judgment against the individual defendants, and in support of its motion it submitted an affidavit of its assistant vice president, David Kissmann. Kissmann stated that on 20 February 1976 he conducted a private sale of the collateral. Before the sale he published a notice of sale in

a newspaper and contacted numerous persons and firms who he thought might be interested in buying the collateral. Peco, Inc. bought the collateral (which consisted of machinery of various types) in bulk for $29,500. Of this sum, $1,418 was used for expenses plaintiff had incurred insuring and storing the collateral. $5,571.95 was paid to the Northwestern Bank in full satisfaction of a lien on part of the collateral, which was prior to plaintiff's lien. $2,200 was paid to the Bank of Asheville in settlement of its claim to a prior lien on part of the collateral, pursuant to a settlement agreement. The remaining $20,310.05 was credited on Tectamar's indebtedness to plaintiff, reducing the indebtedness to $27,333.18. Kissmann stated that copies of the notice of sale, and of plaintiff's agreements with the Northwestern Bank and the Bank of Asheville, were attached to his affidavit.

At the hearing on plaintiff's motion, defense counsel stated that the notice of sale and settlement agreements were not attached to his copy of Kissmann's affidavit and the court noted that these items were also not attached to the original affidavit in the court files. Defense counsel objected to consideration of Kissmann's affidavit and to the consideration of plaintiff's motion for summary judgment but the objection was overruled. Plaintiff's attorney then submitted copies of the notice of sale and settlement agreements. The notice of sale was accompanied by an affidavit of A. Gaston Dalton, who stated that it had appeared in the Asheville Citizen-Times on 11 and 18 February 1976.

In opposition to plaintiff's motion for summary judgment defendants offered the oral testimony of defendant George Becker, who stated that he was formerly the president of Tectamar. He cooperated with plaintiff in searching for buyers for the collateral until he found that further cooperation would jeopardize his position with his present employer. In his opinion "the absolute minimum that could be obtained for said assets [the collateral] on a quick sale was $45,000.00; and, said assets had been appraised in May of 1975 at $88,000 plus." He also stated that collateral should have been sold individually rather than in bulk. He had received firm offers for particular items of the collateral. Some of the people who made these offers called plaintiff and later told George Becker "that they were handled rudely by" plaintiff.

In rebuttal, plaintiff offered the testimony of David Kiss-mann, who stated that Becker had told him several times that the collateral was worth $25,000 to $30,000. Plaintiff accepted bids for the collateral on both a lump-sum and a piecemeal basis, and the total of all the piecemeal bids was substantially less than Peco's bid of $29,500. On cross-examination Kissmann stated that the notice of sale was in the newspaper "for a period of approximately 17 days." Plaintiff paid off the Northwestern Bank's lien on the collateral because Kissmann believed that the UCC required this. It settled the Bank of Asheville's claim, rather than paying the lien in full, because there was some doubt as to the validity of that bank's financing statement.

From judgment granting summary judgment for plaintiff, defendants appealed.

*McGuire, Wood, Erwin & Crow, by Charles R. Worley, for the plaintiff.*

*Long, McClure & Dodd, by Jeff P. Hunt, for the defendants.*

MARTIN, Judge.

**[1]** Defendants contend that testimony of the price paid by Peco for the collateral was inadequate and raises a genuine issue of fact as to whether the foreclosure sale was commercially un-reasonable. We disagree. Defendant offered no testimony that the sale was commercially unreasonable in any other way. G.S. 25-9-507(2) provides:

> "The fact that a better price could have been obtained by a sale . . . in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner."

**[2]** Defendants' contention that the plaintiff conducted the foreclosure sale improperly has merit. Plaintiff's own testimony and affidavits show that it has violated G.S. 25-9-504(1) and (2) by paying off senior liens out of the proceeds of the sale. This was not a reasonable expense of sale. Plaintiff's violation of G.S. 25-9-504(1) and (2) in failing to apply the proceeds of the sale to the satisfaction of Tectamar's indebtedness, upon which defendants were guarantors, raises a genuine issue of fact as to the amount plaintiff is entitled to recover on a defi-

ciency judgment. See *Credit Co. v. Concrete Co.*, 31 N.C. App. 450, 229 S.E. 2d 814 (1976) ; see *Hodges v. Norton*, 29 N.C. App. 193, 223 S.E. 2d 848 (1976).

We hold that summary judgment was improperly entered.

Reversed.

Chief Judge BROCK and Judge HEDRICK concur.