NORTH CAROLINA NATIONAL BANK v. TED R. BURNETTE AND WIFE, IRMA M. BURNETTE

No. 7724SC852

(Filed 3 October 1978)

1. **Uniform Commercial Code § 47— sale of collateral—notice to debtor—burden of proof**

   In actions by a creditor to obtain a deficiency judgment, the creditor has the burden of proving that notice of sale of the collateral was properly sent to the debtor. G.S. 25-9-603.

2. **Uniform Commercial Code § 47— public sale of collateral—notice to debtor— jury question**

   In an action to obtain a deficiency judgment, the trial court erred in granting plaintiff's motion for judgment n.o.v. on the issue of whether plaintiff had given defendants sufficient notice of the public sale of the collateral where there was evidence that plaintiff sent the notice to a different address than that shown for defendants on the security agreement, and that defendants did not in fact receive the notice until after the sale of the collateral had taken place.

3. **Uniform Commercial Code § 47— public sale of collateral—notice to debtor— commercial reasonableness**

   The notice to the debtor of the public sale of collateral required by G.S. 25-9-603 is mandatory and is a distinct and separate requirement from the requirement of commercial reasonableness.

4. **Uniform Commercial Code § 46— public sale of collateral—whether equipment was collateral**

   In an action to obtain a deficiency judgment after the sale of collateral pursuant to a security agreement covering certain road grading and rock crushing equipment "together with all equipment, parts, and accessories now or hereafter used in connection therewith," the trial court erred in granting defendants' motion for judgment n.o.v. on the issue of whether plaintiff creditor had disposed of property of the debtors which was not collateral for the loan where all of the items sold by plaintiff and not specifically listed in the security agreement could fit within the category of equipment used in connection with the listed equipment.

5. **Interest § 2; Judgments § 55— action on note—recovery of interest**

   In an action to recover a deficiency judgment on a promissory note obligating defendants to pay a specified sum "with interest after maturity at the maximum lawful rate," the trial court erred in awarding plaintiff only six percent interest from the date of the judgment, since plaintiff was entitled to twelve percent interest on the judgment from the date the note became due and payable. However, where plaintiff sought twelve percent interest only from the date the complaint was filed, plaintiff's recovery of interest will be limited to that period of time.

**6. Attorneys at Law § 7.4— action on note—attorney fees called for in note**

In an action on a promissory note, the trial court erred in failing to award plaintiff attorney fees in the amount of fifteen percent of the outstanding balance on the note where defendants agreed in the note to pay such amount as reasonable attorney fees if the account was referred to an attorney to enforce collection of any unpaid balance on the note.

Chief Judge BROCK concurring in result.

APPEAL by defendant and cross-appeal by plaintiff from *Lewis, Judge.* Judgment entered 10 January 1977, in Superior Court, MITCHELL County. Heard in the Court of Appeals 15 August 1978.

On 28 January 1974, defendants Ted R. and Irma M. Burnette executed a promissory note to the plaintiff for an indebtedness of $190,000 which represented primarily a consolidation of existing loans. Plaintiff and defendants also executed a security agreement which granted to plaintiff a security interest in certain road grading and rock crushing equipment listed in the security agreement "together with all equipment, parts, and accessories now or hereafter used in connection therewith. . . ." The note provided that payments be made in consecutive monthly intallments.

Defendants never made any payments on the indebtedness. Over a period of months, plaintiff and defendants had numerous discussions about various arrangements which would allow defendants to pay the indebtedness. On 29 July 1974, plaintiff, through its agent Thomas Bledsoe, wrote letters to defendants demanding payment. On 27 September 1974, plaintiff mailed to defendants a notice of sale of the rock crushing equipment pursuant to the terms of the security agreement on 18 October 1974. The notice was sent by certified mail, return receipt requested, and was received by defendants. The same notice of sale was also posted at the McDowell County Courthouse on 27 September 1974.

On 24 October 1974, plaintiff mailed to defendants and posted at the Yancey County Courthouse a copy of a notice of sale of the road grading equipment. The sale was scheduled for 31 October 1974. This notice also was sent by certified mail, return receipt requested, but was sent to a different address from the one used for the first notice. Defendants did not receive this notice until 7

November 1974, well after the sale of the road grading equipment.

After applying the proceeds of both sales to defendants' account, there remained a deficiency of approximately $89,000. On 22 November 1974, plaintiff filed suit for a deficiency judgment. Defendant Ted R. Burnette's answer averred that the two sales were not conducted in a commercially reasonable manner as required by G.S. 25-9-504. The issues were tried before a jury. At the close of all the evidence, plaintiff made several motions for directed verdicts as to defendants' various answers, defenses and counterclaims. Some of these motions were allowed but, since they are not the subject of this appeal, we need not detail them here. The issues eventually submitted to the jury (with the jury's responses in parentheses) are as follows:

"1. In what amount, if any, are the defendants indebted to the plaintiff, North Carolina National Bank, by way of a deficiency judgment?

ANSWER: ($89,008.23).

"2. Did the plaintiff Bank dispose of the crusher equipment in a commercially reasonable manner?

ANSWER: (No).

"3. If not, what amount, if any, is the defendant, Ted R. Burnette entitled to recover for loss caused by the failure of the Bank to dispose of the crusher equipment in a commercially reasonable manner?

ANSWER: ($40,000).

"4. Did the plaintiff Bank dispose of the grading equipment in a commercially reasonable manner?

ANSWER: (No).

"5. If not, what amount, if any, is the defendant, Ted R. Burnette entitled to recover for loss caused by failure of the Bank to dispose of the grading equipment in a commercially reasonable manner?

ANSWER: (49,008.23).

"6. Did the plaintiff Bank dispose of property of the defendant, Ted R. Burnette which was not collateral for the loan of January 28, 1974?

ANSWER: (No).

"7. If so, what amount is the defendant, Ted R. Burnette entitled to recover for loss of his property?

ANSWER: $--."

Following the jury's verdict, plaintiff moved for judgment notwithstanding the verdict (JNOV) pursuant to G.S. 1A-1, Rule 50(b) on issues two, three, four, and five, and, in the alternative, for a new trial. Defendants moved for judgment notwithstanding the verdict on issues one, six, and seven, and, in the alternative, for a new trial. The trial court granted a JNOV for plaintiff as to issues two through five and for defendants as to issues six and seven. The court found that the defendants were entitled to a JNOV of $15,000 in issue seven as a setoff against the deficiency judgment. Both plaintiff's and defendants' alternative motions for a new trial were denied.

To the judgment, defendants excepted and appealed. Plaintiff filed a cross-appeal.

*Smith, Moore, Smith, Schell & Hunter, by Larry B. Sitton and Robert A. Wicker, and Watson and Dobbin, by Richard A. Dobbin, for plaintiff.*

*McLean, Leake, Talman & Stevenson, by Wesley F. Talman, Jr. and Joel B. Stevenson, for defendants.*

MARTIN (Robert M.), Judge.

## Defendants' Appeal

Defendants bring forward two arguments on this appeal. The first is that the trial court erred in entering judgment notwithstanding the verdict as to issue four. Defendants' contention is that the plaintiff had, as a matter of law, failed to comply with statutory requirements of notice of the sale of the grading equipment. While we do not agree that plaintiff as a matter of law failed to comply with the statutory requirements of notice, we do find that the trial court erred in granting plaintiff's motion for JNOV as to issue four.

Bank v. Burnette

The test for determining the appropriateness of a judgment notwithstanding the verdict pursuant to G.S. 1A-1, Rule 50 is the same as is applied on a motion for a directed verdict. *Snelling v. Roberts*, 12 N.C. App. 476, 183 S.E. 2d 872, *cert. denied* 279 N.C. 727, 184 S.E. 2d 886 (1971). Under this test, all the evidence which supports defendants' claim must be taken as true and considered in the light most favorable to the non-moving party, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom. *See, e.g. Wilson v. Miller*, 20 N.C. App. 156, 201 S.E. 2d 55 (1973). In ruling on a motion for a directed verdict, our Supreme Court, in *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971), has emphasized the importance of determining in such questions who has the burden of proof. We do not believe that *Cutts v. Casey* stands for the proposition that a directed verdict may *never* be granted in favor of the party with the burden of proof. Chief Justice Sharp wrote in that opinion:

> "The established policy of this State—declared in both the constitution and statutes—is that the credibility of testimony is for the jury, not the court, and that a genuine issue of fact must be tried by a jury unless this right is waived. [Citation omitted.] Whether there is a 'genuine issue of fact' is, of course, a preliminary question for the judge. There may be, as suggested by Phillips, § 1488.10 (1970 Supp.), 'a few situations in which the acceptance of credibility as a matter of law seems compelled.' If so, we will endeavor to recognize that situation when it confronts us." *Id.* at 421. 180 S.E. 2d at 314.

Nevertheless, it is clear that the granting of a directed verdict in favor of the party with the burden of proof will be more closely scrutinized than otherwise. Since our courts should treat a motion for judgment notwithstanding the verdict under the same standards applied to a motion for a directed verdict, we begin our analysis by determining who in the instant case had the burden of proof.

[1]  G.S. 25-9-504, which deals with the secured party's right to dispose of collateral after the debtor's default, states in pertinent part:

> "(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more

> contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale."

While the statute itself does not address the question of burden of proof, this Court in *Credit Co. v. Concrete Co.*, 31 N.C. App. 450, 229 S.E. 2d 814 (1976), held that a creditor, when suing for a deficiency judgment, has the burden of proving that the disposition of the collateral was conducted in a commercially reasonable manner. Likewise, we believe that, in actions by a creditor to obtain a deficiency judgment, the burden of proving that notice was properly sent by the creditor to the debtor rests with the creditor. *See also Universal C.I.T. Credit Co. v. Rone*, 248 Ark. 665, 453 S.W. 2d 37 (1970).

[2] In the present case, the issue in question, issue four read, "Did the plaintiff bank dispose of the grading equipment in a commercially reasonable manner?" While we do not expressly approve of this statement of the issue, since it combines two questions which the jury was called upon to decide, we think the trial judge's instructions to the jury made clear that this issue covered not only the question of the commercial reasonableness of the sale but also the question of reasonable notice to defendants. Since the plaintiff had the burden of proving reasonable notice to defendants and since there was contradictory evidence concerning that notice, we hold that the trial court's JNOV on issue four was improper.

Under the terms of the security agreement, the plaintiff was obligated to mail a copy of its notice of public sale to defendants at the address shown on the agreement. That address was Route 1, Box 271, Spruce Pine, North Carolina 28777. The notice concerning the sale of the crushing equipment was in fact sent to,

and received by, defendants at this address. According to one of plaintiff's witnesses, however, the notice concerning the sale of the grading equipment was sent to defendants at Route 1, Little Switzerland, North Carolina 28749. This was so despite the fact that on the face of the notice was the statement that the notice was mailed to defendants at Route 1, Box 271, Spruce Pine. Plaintiff's agent, Thomas Bledsoe, admitted in his testimony that he knew that there was no Route 1, Little Switzerland. Plaintiff argues that, since the demand note sent 29 July 1974 reached defendants at the Route 1, Little Switzerland address, the bank's mailing constituted reasonable notice. We note, however, that the return receipt on the demand letters indicated receipt by defendants at P. O. Box 121, Little Switzerland. While there was evidence that defendants did live in Little Switzerland, there was uncontroverted evidence that defendants did not in fact receive the notice until 7 November 1974, well after the sale of grading equipment had taken place.

[3] Plaintiff argues that, under G.S. 25-9-601, it is entitled to a conclusive presumption of commercial reasonableness. G.S. 25-9-601 reads:

"Disposition of collateral by public proceedings as permitted by G.S. 25-9-504 may be made in accordance with the provisions of this part. The provisions of this part are not mandatory for disposition by public proceedings, but any disposition of the collateral by public sale wherein the secured party has substantially complied with the procedures provided in [part 6] shall conclusively be deemed to be commercially reasonable in all aspects."

G.S. 25-9-603, which is within Part 6, outlines the requirement of notice:

"(1) In each public sale conducted hereunder, the notice of sale shall be posted on a bulletin board provided for the posting of such legal notices, in the courthouse, in the county in which the sale is to be held, for at least five days immediately preceding the sale.

"(2) In addition to the posting of notice required by subsection (1), the secured party or other party holding such public sale shall, at least five days before the date of sale,

mail by registered or certified mail a copy of the notice of sale to each debtor obligated under the security agreement:

"(a) at the actual address of the debtors, if known to the secured party, or

"(b) at the address, if any, furnished the secured party, in writing, by the debtors, or otherwise at the last known address."

Plaintiff's contention is that since it *substantially* complied with the notice requirement of G.S. 25-9-603 by posting the notice at the Yancey County Courthouse and mailing the notice to defendants at a non-existent address, it is entitled to a conclusive presumption of commercial reasonableness. We do not, however, accept the construction of Part 6 which plaintiff advocates. Carried to its logical extreme, a creditor could substantially comply with all the other provisions of Part 6, fail to give *any* notice to the debtor, and still be entitled to the exclusive presumption of commercial reasonableness. We believe and hold that the notice required under G.S. 25-9-603 is mandatory and is a distinct and separate requirement from the requirement for commercial reasonableness. We point out that other sections of Part 6 are not written in language as strong as G.S. 25-9-603. For example, G.S. 25-9-602, dealing with the contents of the notice, contains the mandate that the notice "shall *substantially*" include certain items of information. G.S. 25-9-604 and -605, dealing respectively with exceptions as to perishable property and postponement of public sale, use the word "may" which is discretionary language. On the other hand, G.S. 25-9-603 uses the unmodified word "shall." We, therefore, conclude that the requirements of G.S. 25-9-603 for notice of sale must be complied with. As stated above, under the facts of the case before us, the jury might reasonably have found that G.S. 25-9-603 was not followed; hence the judgment notwithstanding the verdict for issue 4 was improperly granted.

Defendants' second argument is that the court erred in entering judgment notwithstanding the verdict as to issues 2 and 4 because the application of G.S. 25-9-601 *et seq.* in the JNOV amounted to a deprivation of defendants' property without due process. Since we have construed G.S. 25-9-601 *et seq.* in a way which requires notice to defendants and since defendants have failed to argue specifically why the JNOV for issue 2 violated

defendants' due process rights, we see no need to address this question.

## Plaintiff's Appeal

[4] Plaintiff's first of three arguments is that the trial court erred in allowing the defendants' motion for a JNOV on Issues 6 and 7. Assuming that the JNOV was granted against the party with the burden of proof on the issue of collateral, we then must review the evidence in the light most favorable to plaintiff, giving it the benefit of every reasonable inference which may legitimately be drawn therefrom. With this standard before us we conclude that plaintiff submitted enough evidence, which the jury apparently believed, to withstand the JNOV. The security agreement sufficiently described the collateral and covered "all equipment, parts and accessories now or hereafter used in connection therewith. . . ." While there was contradictory evidence concerning what had been sold and what remained, it was clear that defendants had not checked the site of the rock crushing operation to determine whether certain allegedly illegally sold items remained. All of the items admittedly sold by plaintiff and not specifically listed in the security agreement could fit within the category of equipment used in connection with the listed equipment. We therefore find that the trial court's JNOV on Issues 6 and 7 was error.

[5] The second question presented by plaintiff's appeal is whether the trial court erred in entering final judgment without awarding plaintiff interest from the date the complaint was filed. Under the terms of the promissory note, defendants were to pay plaintiff $253,586.37, "with interest after maturity at the maximum lawful rate." Plaintiff, on 29 July 1974, declared the note mature and immediately due and payable.

We believe that the trial court did err in awarding plaintiff six percent interest from the date of the judgment. Plaintiff is entitled to twelve percent interest on $40,000 from the date the promissory note became due and payable. Since, however, plaintiff seeks twelve percent interest only from the date the complaint was filed in this action, we limit its recovery to that period of time.

[6] Plaintiff's final argument on this appeal is that the trial court erred in entering the final judgment without granting plaintiff attorneys' fees in the amount of fifteen percent of the outstanding balance. We agree that for attorneys' fees the plaintiff was entitled to an award of fifteen percent of the final judgment ($40,000). The promissory note read:

"If this account is referred to an attorney to acquire possession of the Collateral described below or to enforce collection of any unpaid balance hereunder, DEBTOR agrees to pay all collection expenses and reasonable attorneys' fees of Secured Party. DEBTOR stipulates and agrees that 15% of the sum of the unpaid balance hereof at the time the matter is referred to an attorney shall be deemed reasonable attorneys' fees."

*See* G.S. 6-21.2.

In summary, in defendants' appeal, the case is reversed and remanded in part and affirmed in part. In plaintiff's appeal, the case is reversed and remanded. On remand, the trial court shall enter judgment consistent with this opinion.

As to defendants' appeal, reversed and remanded in part and affirmed in part.

As to plaintiff's appeal, reversed and remanded.

Judge MITCHELL concurs.

Chief Judge BROCK concurs in the result.

Chief Judge BROCK concurring in the result.

I concur in the result reached by the majority opinion in this case; however, I disapprove of the language of the opinion insofar as it intimates that a mere allegation by the debtor that the sale was *not* conducted in a commercially reasonable manner or an allegation by the debtor of an inadequate and unreasonably low price would justify submission of such issue to the jury. The majority opinion does not hold that such allegations require submission to the jury but the intimation appears strong. This Court recently held in *Trust Co. v. Murphy*, 36 N.C. App. 760 (*appeal dismissed, cert. denied*, 295 N.C. 557, 248 S.E. 2d 734 [1978]) that

the allegations of a debtor of any inadequate and unreasonable price obtained for the collateral at public sale does not justify a hearing upon the question of commercial reasonableness if the creditor has shown that there was in fact a public sale following substantial compliance with the procedures provided in Part 6 of Article 9 of the Uniform Commercial Code (G.S. 25-9-601 through 25-9-607). *Trust Co. v. Murphy* further held that the provision of G.S. 25-9-601 which provides "any disposition of the collateral by public sale wherein the secured party has substantially complied with the procedures provided in this part [Part 6] shall conclusively be deemed to be commercially reasonable in all aspects" does not offend the due process clause of either the Constitution of the United States or the Constitution of North Carolina.

The purpose of this concurrence is only to point out that in my opinion and in the opinion of this Court in *Trust Co. v. Murphy* when the creditor shows substantial compliance with Part 6 the question of commercial reasonableness does not arise.