GARY HENSLEY, PLAINTIFF v. RAY'S MOTOR COMPANY OF FOREST CITY, INC., D/B/A
APPLEGATE MOBILE HOMES, DEFENDANT

No. COA02-712

(Filed 3 June 2003)

**Statutes of Limitation and Repose— breach of contract—
mobile home—predominant factor test**

The trial court did not err in a breach of contract action aris-
ing out of the purchase of a mobile home by granting defendant's
motion to dismiss plaintiff's action based on the expiration of the
pertinent statute of limitations where the contract of sale limited
the time to bring an action for breach of contract to one year and
plaintiff failed to file suit until over three years after tendered
delivery, because: (1) plaintiff's mobile home does not constitute
an improvement to land requiring a six-year statute of limitations
under N.C.G.S. § 1-50(a)(5) in light of the court's traditional treat-
ment of mobile homes as a good and absent allegations justifying
the characterization of the mobile home as realty; (2) although
the contract involved both the sale of goods and the provision of
services, North Carolina now adopts the predominant factor test
in its determination that the contract is predominantly a contract
for the sale of goods, and the parties by the original agreement
may reduce the period of limitation to not less than one year
under N.C.G.S. § 25-2-725; and (3) defendant is not estopped
from asserting the statute of limitations when plaintiff's unwill-
ingness to accept repairs to the mobile home caused the statute
of limitations to run.

Appeal by plaintiff from order entered 15 September 2000 by
Judge Anna F. Foster in Cleveland County District Court. Heard in the
Court of Appeals 12 March 2003.

*Deaton & Biggers, P.L.L.C., by Brian D. Gulden, for plaintiff-
appellant.*

*Hamrick, Bowen, Mebane, Greenway & Lloyd, L.L.P., by
Bradley K. Greenway, for defendant-appellee.*

CALABRIA, Judge.

On 8 January 1994, Gary Hensley ("plaintiff") entered into a contract to purchase a mobile home from Ray's Motor Company of Forest City, Inc., d/b/a Applegate Mobile Homes ("Applegate"), a North Carolina corporation engaged in the sale and distribution of mobile homes. The mobile home was manufactured by Southern Energy Homes of North Carolina, Inc., d/b/a Imperial Homes ("Imperial"). On the back of the contract, under "Additional Terms and Conditions," a one-year period of limitation clause provided the following: "I [the purchaser] understand and agree that if either of us [the purchaser and seller] should breach this contract—the other of us shall have only one year after the occurrence of that breach in which to commence an action for a breach of this contract."

The mobile home was delivered and set up in April 1994. Plaintiff immediately noticed problems and notified the Department of Insurance. Throughout the 1994 calendar year, plaintiff continued to observe and report defects in the mobile home to Imperial, and Imperial made certain repairs. On 2 December 1994, Imperial and Applegate were notified by the Department of Insurance to investigate and correct problems reported by plaintiff. Thereafter, the Department of Insurance notified plaintiff they had received further information, and it was their belief the problems had been resolved. More importantly, the Department of Insurance provided plaintiff a final opportunity to respond if the information was unsatisfactory. When plaintiff failed to respond, the Department of Insurance closed plaintiff's file.

On 23 and 27 March 1995, Imperial wrote to plaintiff in order to set up a time when representatives from Imperial and Applegate could inspect plaintiff's home to address his remaining items of concern. Imperial attempted to contact plaintiff on at least five occasions in order to either view the home and have a contractor make the necessary repairs or settle the continuing problems with a cash settlement. Correspondence with plaintiff's attorney indicated plaintiff wanted a new mobile home or a full refund, both of which Imperial was unwilling to provide.

On 27 October 1997, over three years after delivery of the home and discovery of the defects, plaintiff filed suit in Cleveland County District Court against Imperial and Applegate. Imperial and Applegate answered the complaint and moved to dismiss plaintiff's claims,

asserting as an affirmative defense that the claim was barred by the statute of limitations. On 15 September 2000, the trial court granted Applegate's motion to dismiss but denied Imperial's motion to dismiss. Plaintiff filed a notice of voluntary dismissal against Imperial, then appealed the trial court's granting of Applegate's motion.

In light of evident confusion in the record as to the procedural context of the trial court's action, we note that since the trial court was presented with affidavits and exhibits and did not exclude matters outside the pleadings, we treat the motion as one for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. *Baugh v. Woodard*, 56 N.C. App. 180, 287 S.E.2d 412 (1982).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). "The rule is designed to permit penetration of an unfounded claim or defense in advance of trial and to allow summary disposition for either party when a fatal weakness in the claim or defense is exposed." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975). The party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact. *Dixie Chemical Corp. v. Edwards*, 68 N.C. App. 714, 715, 315 S.E.2d 747, 749 (1984).

"Statutes of limitations are inflexible and unyielding. They operate inexorably without reference to the merits of plaintiff's cause of action." *Shearin v. Lloyd*, 246 N.C. 363, 370, 98 S.E.2d 508, 514 (1957). "The purpose of a statute of limitations is to afford security against stale demands, not to deprive anyone of his just rights by lapse of time." *Id.*, 246 N.C. at 371, 98 S.E.2d at 514. In the instant case, the trial court concluded plaintiff had filed his cause of action outside of the applicable statute of limitations.

On appeal, plaintiff asserts three arguments: (I) the mobile home was an improvement to property; therefore, the applicable standard of limitations is six years; (II) the contract for the mobile home was primarily a contract for services; and (III) even if the contract is governed by North Carolina's Uniform Commercial Code ("UCC") as a transaction in goods, Applegate is estopped from pleading the statute of limitations.

## I. Nature of the Mobile Home

Plaintiff contends the purchase and setup of a mobile home is an improvement to real property, requiring a six-year statute of limitations as an action to "recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property . . . ." N.C. Gen. Stat. § 1-50(a)(5) (2001). Traditionally, the law treats a mobile home not as an improvement to real property but as a good, defined and controlled by the UCC as something "movable at the time of identification to the contract for sale . . . ." N.C. Gen. Stat. § 25-2-105(1) (2001). For example, this Court determined a mobile home was a good, the sale of which was controlled as a transaction under the UCC. *Alberti v. Manufactured Homes, Inc.*, 329 N.C. 727, 732, 407 S.E.2d 819, 822 (1991). Moreover, we have "note[d] that prior decisions of this Court and our Supreme Court have classified a mobile home as a 'motor vehicle' for purposes of interpreting the application of our motor vehicle laws to mobile homes." *Hughes v. Young*, 115 N.C. App. 325, 328, 444 S.E.2d 248, 250 (1994) (citing *Peoples Sav. & Loan Ass'n v. Citicorp Acceptance Co.*, 103 N.C. App. 762, 407 S.E.2d 251 (1991); *King Homes, Inc. v. Bryson*, 273 N.C. 84, 159 S.E.2d 329 (1968)).

We have stated that under some circumstances, mobile homes can be considered realty and thereby could constitute an improvement to real property. *Hughes*, 115 N.C. App. at 328, 444 S.E.2d at 250. These circumstances include where a plaintiff shows either (1) annexation of the mobile home to land with the intent that it be permanent or (2) circumstances surrounding the association between the land and the mobile home or the relationship between the parties otherwise justifies treating the mobile home as realty which is to become or is part of the land. *Id.* In the instant case, plaintiff has made no allegations that the mobile home was permanently affixed to the property.[1] Additionally, plaintiff failed to show any relationship between the parties or between the land and the mobile home which would otherwise justify treating the mobile home as an improvement to the land on which it has been placed. In light of our traditional treatment of mobile homes and absent allegations justifying the characterization of the mobile home as realty, we hold the plaintiff's mobile home does not constitute an improvement to land.

---

1. The only allegation plaintiff has made concerning how the mobile home is affixed to the land is to state that water and electricity has been provided. That, standing alone, is insufficient.

II. Mixed Contract

Alternatively, plaintiff argues the sales contract for the mobile home was primarily a contract for services because Applegate delivered and set up the mobile home. The contract in the instant case is a mixed contract in that it encompassed both the sale of a good (i.e. the mobile home) and the provision of services (i.e. the delivery and setup). Accordingly, this Court must determine whether the contract is controlled by the UCC as a sale of goods or is governed by the common law of contracts as a service contract.

The scope of the UCC is limited to "transactions in goods" and does not apply to contracts for the provision of services. N.C. Gen. Stat. § 25-2-102 (2001). The leading case on the UCC's applicability to contracts which involve both goods and services is *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974). In *Bonebrake*, the Court determined a contract for both goods and services should be considered a "sale of goods" under the UCC because

> [the] test for inclusion or exclusion is not whether [the sale of goods and the provision of services] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved . . . .

*Bonebrake*, 499 F.2d at 960. While North Carolina has yet to expressly adopt the so-called "predominant factor" test set out in *Bonebrake*, previous decisions by North Carolina courts accord with the test. *See, e.g., Batiste v. Home Products Corp.*, 32 N.C. App. 1, 6, 231 S.E.2d 269, 272 (1977) (examining the "essence of the relationship" between a physician and a patient to determine whether the prescription of medication by the physician was the sale of goods or the provision of services); *HPS, Inc. v. All Wood Turning Corp.*, 21 N.C. App. 321, 324, 204 S.E.2d 188, 189 (1974) (treating a contract to furnish and install a boiler conversion system as a sale of goods). Surveying the jurisdictions which have addressed mixed contracts reveals the *Bonebrake* test has been overwhelmingly adopted. David J. Marchitelli, Annotation, *Causes of Action Governed by Limitations Period in UCC § 2-725*, 49 A.L.R.5th 1, 102-06 (1997). We expressly adopt the test enunciated in *Bonebrake* as the appropriate test to determine whether the UCC controls the rights of the parties to a contract involving both the sale of goods and the provision of services.

Accordingly, where the predominant factor of a contract is the rendition of services with the sale of goods incidentally involved, the UCC is not applicable. However, where the predominant factor of the contract is the sale of goods with the provision of services incidentally involved, the UCC controls.

Factors which have been used in determining whether a mixed contract should be governed by the UCC include the following: "(1) the language of the contract, (2) the nature of the business of the supplier, and (3) the intrinsic worth of the materials." *See, e.g., Princess Cruises, Inc. v. General Elec. Co.*, 143 F.3d 828, 833 (4th Cir. 1998); *Parks v. Alteon, Inc.*, 161 F. Supp. 2d 645, 649 (M.D.N.C. 2001). Applying these factors here, we note the language of the contract deals primarily with the terms of sale, including the price, warranties, description and model of the mobile home, and options and accessories. The nature of Applegate's business is the sale and distribution of mobile homes. Finally, the intrinsic worth of the mobile home is approximately its fair market value or the purchase price. Accordingly, we hold the contract is predominantly a contract for the sale of goods, and the provisions of the UCC control the rights of the parties.

Under the UCC, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." N.C. Gen. Stat. § 25-2-725(1) (2001). In the instant case, the contract of sale limited the time to bring an action for breach of contract to one year. Applegate delivered the mobile home in April 1994. Plaintiff became aware of the breach no later than his notification to the Department of Insurance in November 1994. Plaintiff failed to file suit for breach of contract until 27 October 1997, over three years after Applegate tendered delivery. Accordingly, we conclude plaintiff's action is barred by the applicable statute of limitations.

III. Estoppel

Plaintiff asserts Applegate should be estopped from pleading the statute of limitations as a defense pursuant to *Nowell v. Tea Co.*, 250 N.C. 575, 579, 108 S.E.2d 889, 891 (1959) because the delay in plaintiff bringing suit was induced by acts and representations by Applegate, and the repudiation of such acts and representations amounts to a breach of good faith. In *Nowell*, the defendant assured the plaintiff he would perform any necessary corrections to the building in the future

**HOLCOMB v. BUTLER MFG. CO.**

[158 N.C. App. 267 (2003)]

due to re-occurring problems in his construction work by stating he would "be entirely responsible and . . . [would] remedy the situation," if a previous complaint re-occurred. *Id.*, 250 N.C. at 578, 108 S.E.2d 891. In reliance on such promises, the plaintiff in *Nowell* entered into possession of the building, and after the statute of limitations had run, the defendant refused to assume responsibility or correct the re-occurring problem. *Id.* By contrast, in the case *sub judice* plaintiff was contacted on numerous occasions in order to commence repairs. Plaintiff repeatedly failed to respond or responded by demanding a new mobile home or a refund. After numerous letters, the one-year contractual limitation on plaintiff's claims was specifically raised, and plaintiff was urged to make contact in order to resolve the matter without further delay. The cause of the delay was not representations made by Applegate, but rather, it was plaintiff's unwillingness to accept repairs to the mobile home which caused the statute of limitations to run, and the theory of estoppel, as espoused in *Nowell*, is inapposite.

We have carefully considered plaintiff's remaining claims and found them to be without merit.

Affirmed.

Judges McCULLOUGH and TYSON concur.