Water.io Ltd v. Sealed Air Corp., 2025 NCBC 5.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV029851-590

WATER.IO LTD (f/k/a WaterIO Ltd.),

Plaintiff,

v.

SEALED AIR CORPORATION,

Defendant.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO DISMISS**

1. This case arises out of a dispute over a contract for the development and sale of sensors for use in insulated shipping containers. Plaintiff Water.io Ltd claims that Defendant Sealed Air Corporation breached their contract by repudiation and nonperformance. Sealed Air counterclaims for breach of contract and related wrongs. Water.io's motion to dismiss the counterclaims is pending. (ECF No. 11.) For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion.

*Robinson, Bradshaw & Hinson, P.A., by Edward F. Hennessey, IV, Emma W. Perry, and Kelley Marie Storey, for Plaintiff Water.io Ltd (f/k/a WaterIO Ltd.).*

*Moore & Van Allen PLLC, by Bruce J. Rose and Mark J. Wilson, for Defendant Sealed Air Corporation.*

Conrad, Judge.

I.
BACKGROUND

2. The following background assumes that the allegations in the counterclaims are true.

3. Sealed Air is a North Carolina-based packaging company. Among its offerings are insulated shipping containers that use vacuum insulation panels, or

VIPs, to improve insulation performance. VIPs are "gas-tight enclosures with a rigid core, from which air has been evacuated." (Countercl. ¶¶ 1, 3, 5, ECF No. 6.)

4. Water.io is an Israeli company that makes and sells "water bottles with sensors that can transmit data to a mobile app." In May 2018, Sealed Air approached Water.io to discuss adding a temperature and humidity sensor to VIPs. Six months later, the parties finalized a contract titled "Purchase Agreement" for what they coined "SMART VIP sensors." The contract calls for three phases. In the first phase, Water.io would develop and deliver 100 sensor prototypes and design a client portal and mobile app for displaying sensor data. In the second phase, Sealed Air would test the prototypes. And in the third phase, Water.io would begin mass production, making 15,000 sensors for use in a pilot trial with one of Sealed Air's customers. (Countercl. ¶¶ 2, 4, 5, 7, 11; *see also* Purchase Agrmt., Add. A, ECF No. 12.6.)

5. The parties amended their contract twice. In late 2019, they added development milestones and doubled the number of sensors that Water.io would have to produce and deliver to Sealed Air, all to be completed by 30 June 2020. Then, in early June 2020, they further amended the agreement by adopting a written technical specification, and Sealed Air committed to purchase over four million sensors through 2025. (*See* Countercl. ¶¶ 13, 15; *see also* 1st Am. Agrmt., ECF No. 12.7; 2d Am. Agrmt., ECF No. 12.8.)

6. Not long after signing the second amendment, the parties' relationship began to fray. Water.io missed its deadline to deliver the first batch of 30,000 sensors. It made a partial delivery on 31 December 2020—half a year too late—and then

delivered the rest by mid-February 2021. The sensors were, in Sealed Air's words, "wholly unusable." When Sealed Air complained, Water.io's CEO acknowledged the defects and offered assurances that future deliveries would conform to specifications. (Countercl. ¶¶ 18, 19, 22, 23.)

7. Meanwhile, Water.io sought Sealed Air's support for a planned initial public offering. But Sealed Air balked at the request. It was then, Sealed Air alleges, that Water.io became openly hostile. Throughout May and June 2021, the parties exchanged accusations, demands, and litigation threats. Water.io asserted that Sealed Air had waited too long to reject the first batch of sensors and that Sealed Air was obliged to fulfill its minimum purchase commitments. Sealed Air responded with a notice of breach and demanded that Water.io cure the defects within thirty days. Attempts to negotiate a solution through counsel were unsuccessful, and Water.io declared the contract to have been terminated. (*See* Countercl. ¶¶ 21, 25, 26, 28–33, 39.)

8. Despite the litigation threats, neither side filed suit immediately. In mid-2024, Water.io began this lawsuit, claiming that Sealed Air had wrongfully repudiated the contract and reneged on its minimum purchase obligations. (*See* Compl., ECF No. 3.)

9. Sealed Air filed its own lawsuit in federal court (*Sealed Air Corp. v. Water.io Ltd.*, No. 3:24-cv-00663 (W.D.N.C.)) but eventually dismissed that action in favor of pursuing counterclaims in this action. According to Sealed Air, Water.io knew all along that it could not meet the contractual milestones or make sensors that would

meet the necessary specifications. Even so, Water.io allegedly made promises that it could not keep because it hoped to use its relationship with Sealed Air to inflate its value in advance of its initial public offering. Sealed Air asserts counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair or deceptive trade practices under N.C.G.S. § 75-1.1. (*See, e.g.*, Countercl. ¶¶ 8, 9, 20, 42, 45, 46, 53, 62, 68.)

10. Water.io has moved to dismiss all counterclaims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. The motion is fully briefed, and the Court held a hearing on 23 January 2025. The motion is ripe for decision.

## II.
## ANALYSIS

11. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). Dismissal is proper when "(1) the complaint on its face reveals that no law supports the . . . claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the . . . claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g., Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019).

12. **Breach of Contract.** Sealed Air's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing are based on the same

underlying allegations. The Court therefore "analyzes the two claims as one." *Haigh v. Superior Ins. Mgmt. Grp.*, 2017 NCBC LEXIS 100, at *13 (N.C. Super. Ct. Oct. 24, 2017); *see also Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 38–39 (2018) (treating claim for breach of implied covenant as "part and parcel" of claim for breach of contract when "based upon the same acts").

13. In moving to dismiss these claims, Water.io argues that they are untimely. The strength of the argument depends in part on which statute of limitations applies. Water.io advocates the three-year limitations period that applies to most contract claims. *See* N.C.G.S. § 1-52(1). Sealed Air, by contrast, advocates the Uniform Commercial Code's four-year limitations period. *See id.* § 25-2-725(1).

14. The Uniform Commercial Code "applies to transactions in goods." *Id.* § 25-2-102. When a contract is for both goods and services, as in this case, the presiding court must decide whether goods or services predominate. If "the predominant factor of the contract is the sale of goods with the provision of services incidentally involved," then the Code applies. *Hensley v. Ray's Motor Co. of Forest City, Inc.*, 158 N.C. App. 261, 266 (2003). Relevant factors include "the language of the contract," "the nature of the business of the supplier," and "the intrinsic worth of the materials." *Id.*

15. The language of the parties' contract strongly suggests that it is predominantly a transaction in goods. Sealed Air and Water.io refer to each other as "Buyer" and "Supplier," call their contract a "Purchase Agreement," and state that the contract's purpose is to establish terms for the "purchase" and "sale" of "Products."

(Purchase Agrmt. p.1.)  The contract is also peppered with terms typically associated with a sale of goods, including, among other things, the use of a "purchase order" to specify "quantity" and "delivery location," the seller's need to maintain a "minimum inventory," and the buyer's "right to inspect" the products and to accept or reject a delivery for nonconformity.  (Purchase Agrmt. §§ 2.3, 2.4, 3.2, 4.5, 10.1.)  "All of this contractual language is peculiar to goods, not services, and indicates that the parties had a contract for goods in mind." *BMC Indus. v. Barth Indus.*, 160 F.3d 1322, 1331 (11th Cir. 1998) (cleaned up) (applying "predominant factor" test); *see also Wadley Crushed Stone Co. v. Positive Step, Inc.*, 34 F.4th 1251, 1257 (11th Cir. 2022) (considering "how the parties refer to each other and the labeling of the contract").

16.    Other factors point to the same conclusion.  The nature of Water.io's business is to make and sell goods, namely water bottles with wireless sensors.  And the products that Water.io agreed to develop and sell to Sealed Air are wireless sensors adapted to VIPs for use in insulated shipping containers.  These are movable goods, yet "another hallmark of a contract for goods rather than services." *BMC Indus.*, 160 F.3d at 1330.

17.    Water.io argues that the contract is primarily one for product development and is therefore analogous to a services contract for the development of a novel software system.  The Court disagrees.  In many contracts for an artisanal or custom-built work, the price tends to reflect the value of the creative enterprise (time and skill) rather than the work's intrinsic worth or expected utility.  Hence, courts view them as services contracts. *See, e.g.*, *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th

Cir. 1974) ("contract with artist for painting"). Here, though, the parties' contract prioritizes mass production: one batch of 15,000 sensors at first, later expanded via amendment to a multiyear commitment for millions of sensors. Water.io's initial development services were incidental to the longer-term goal of mass production. And although Sealed Air paid a few tens of thousands of dollars for development, the contract's pricing tilts heavily toward the finished items, which are priced per unit as is typical of a contract for goods. *See Hensley*, 158 N.C. App. at 266 (applying Code to contract concerned with "price, warranties, description and model of the mobile home, and options and accessories"); *see also BMC Indus.*, 160 F.3d at 1330 ("[W]hen . . . the charge for goods exceeds that for services, the contract is more likely to be for goods.").

18.    In sum, the Court concludes that the parties' contract is predominantly for the sale of goods. Thus, the Uniform Commercial Code applies, and so does its four-year statute of limitations. *See* N.C.G.S. § 25-2-725(1) ("An action for breach of any contract . . . must be commenced within four years after the cause of action has accrued.").*

19.    The length of the limitations period matters because Sealed Air alleges several breaches, some having occurred more recently than others. Take, for example, Sealed Air's claim that Water.io "failed to meet milestones set forth in the

---

* The briefing suggests that some courts have split mixed contracts so that terms related to goods are governed by one statute of limitations and terms related to services are governed by another. As far as the Court can tell, no North Carolina court has taken that approach, presumably because it would be inconsistent with the predominant factor test and could be unworkable in many cases.

Agreement." (Countercl. ¶ 57.) These milestones, including the delivery of 30,000 sensors, were to be completed by 30 June 2020. (*See* Countercl. ¶ 13.) Any breach arising from Water.io's failure to meet the milestones necessarily occurred on that date. *See* N.C.G.S. § 25-2-725(2) ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."). Sealed Air's claim for breach of the contractual milestones, which accrued more than four years before this action began, is therefore time-barred. *See Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994) (holding that a statute of limitations "may be the basis of a 12(b)(6) dismissal if on its face the complaint reveals the claim is barred").

20. This is not true, however, for the allegation that Water.io "failed to provide production-ready sensors that met the technical specifications in the Agreement." (Countercl. ¶ 58.) A breach for failure to deliver conforming goods "could not and did not occur until" Water.io "actually delivered" sensors that were "different from what plaintiff and defendant agreed upon in the purchase agreement." *Lee v. R & K Marine, Inc.*, 165 N.C. App. 525, 528 (2004); *see also* N.C.G.S § 25-2-711(1) (discussing buyer's choice of remedies for nondelivery and nonconforming goods). Assuming the allegations are true, Water.io made its first delivery on 31 December 2020, well within the four-year limitations period. As a result, the claim that Water.io delivered nonconforming goods is not untimely on its face.

21. Sealed Air also alleges that Water.io "failed to produce adequate solutions," "failed to cure these breaches during the time specified in the Agreement," and

"refused to engage meaningfully in [Sealed Air's] good faith attempts to cure." (Countercl. ¶¶ 59–61.) These overlapping allegations are somewhat ambiguous because Sealed Air does not say which contract provision or provisions Water.io supposedly breached. For now, the Court need only decide whether the claim based on this alleged failure to cure (assuming that a failure to cure amounts to a breach) is facially time-barred. It is not. The alleged events occurred after 26 May 2021— when Sealed Air notified Water.io of a material breach and gave it thirty days to cure—which is again well within the four-year limitations period. (*See* Countercl. ¶ 30.)

22. Accordingly, the Court dismisses the counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing to the extent based on a failure to meet contractual milestones. In all other respects, the Court denies the motion to dismiss these counterclaims.

23. **Section 75-1.1.** By statute, "unfair or deceptive acts or practices in or affecting commerce" are "unlawful." N.C.G.S. § 75-1.1. Though broad, this language is "not intended to apply to all wrongs in a business setting." *Dalton v. Camp*, 353 N.C. 647, 657 (2001). Our appellate courts have stressed that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62 (1992). A party alleging breach of contract "must show substantial aggravating circumstances attending the breach," *Eastover Ridge, LLC v. Metric Constructors, Inc.*, 139 N.C. App. 360, 368 (2000) (citation and quotation marks omitted), such as

"forged documents, lies, and fraudulent inducements," *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *14 (N.C. Super. Ct. Jan. 5, 2016) (citation and quotation marks omitted).

24. Sealed Air's allegations of fraudulent inducement do not withstand scrutiny. It alleges in conclusory fashion that Water.io never intended to fulfill its contractual obligations. (*See* Countercl. ¶ 20.) True, "[a]llegations that a party entered into a contract with no intent to perform may support a" claim under section 75-1.1. *Forest2Market*, 2016 NCBC LEXIS 3, at *18. But "such allegations must be pleaded with particularity." *Vitaform, Inc. v. Aeroflow, Inc.*, 2020 NCBC LEXIS 132, at *37 (N.C. Super. Ct. Nov. 4, 2020). The counterclaims' conclusory allegations do not come close to meeting that heightened pleading standard.

25. Other allegations state that Water.io "was aware" at the time it entered into the contract (as well as later amendments) that it lacked the ability to make sensors conforming to the contractual specifications. (*E.g.*, Countercl. ¶¶ 8, 14, 16, 45.) Nowhere, though, does Sealed Air allege that Water.io made any affirmative misrepresentation about its capabilities. Even if Sealed Air's pleading could be construed to allege an affirmative misrepresentation, there are no particularized allegations as to the "time, place, and content" of the misrepresentation or the "identity of the person making" it. *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39 (2006). Water.io's mere awareness of its own shortcomings at the time of contracting, even if true, is not enough to transform its eventual breach into a violation of section 75-1.1. *See Forest2Market*, 2016 NCBC LEXIS 3, at *18–19

(concluding that allegation that defendant "knew or should have known it could not deliver" work specified in contract amounted at most to "a mere broken promise" (cleaned up)); *see also Wells Fargo Bank, N.A. v. Corneal*, 238 N.C. App. 192, 196–96 (2014) ("[D]efendants' allegation that plaintiff broke its promise, standing alone, does not constitute a [section 75-1.1] claim.").

26. Sealed Air's attempt to allege egregious acts during contractual performance, as opposed to contract formation, likewise does not withstand scrutiny. With rare exception, a violation of section 75-1.1 "is unlikely to occur during the course of contractual performance." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 245 N.C. App. 378, 383 (2016). "One reason for this is that disputes concerning the circumstances of the breach are often bound up with one party's exercise of perceived rights and remedies under the contract." *Post v. Avita Drugs, LLC*, 2017 NCBC LEXIS 95, at *10–11 (N.C. Super. Ct. Oct. 11, 2017). On that basis, our courts have held that "[a] party's threats to terminate, efforts to encourage another to continue contractual performance while planning to breach, and refusal to otherwise meet contractual obligations do not rise to the level of aggravating circumstances." *Id.* at *11 (cleaned up); *see also Haddock v. Volunteers of Am., Inc.*, 2021 NCBC LEXIS 70, at *27 (N.C. Super. Ct. Aug. 25, 2021).

27. But threats and plans to breach are all that Sealed Air alleges. Water.io supposedly stood by its contractual commitments while seeking Sealed Air's endorsement for an initial public offering. When that effort failed, Water.io resorted to "noncompliance and threats of litigation to force [Sealed Air] to pay millions of

dollars for defective products." (Countercl. ¶ 44.) Even if true, these allegations fall short. Disputes about whether Water.io's products were defective and whether Sealed Air must pay for them are, at bottom, disputes about the parties' contractual rights and obligations. *See, e.g.*, *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at \*20 (N.C. Super. Ct. Mar. 27, 2017) ("These allegations concern nothing more than disputes over the interpretation and performance of the Agreement, which includes specific provisions governing payment, rejection of unsuitable [goods], and the requirements for termination."); *see also Terry's Floor Fashions, Inc. v. Georgia-Pacific Corp.*, 1998 U.S. Dist. LEXIS 15392, at \*29–30 (E.D.N.C. July 22, 1998) ("Regardless of the fact that plaintiff has recited language to suggest that defendant 'deliberately misrepresented' the traits and qualities of the [product] and that plaintiff entered into the contract on that basis, the fact remains that this dispute, at bottom, is one over whether the product that was delivered by defendant was in accordance with the specifications as ordered by plaintiff.").

28. Accordingly, the Court grants the motion to dismiss the section 75-1.1 claim. *See Post*, 2017 NCBC LEXIS 95, at \*15–16 (dismissing section 75-1.1 claim for want of substantial aggravating circumstances); *Forest2Market*, 2016 NCBC LEXIS 3, at \*19 (same). Having done so, the Court need not address Water.io's alternative arguments for dismissal of this claim.

## III.
## CONCLUSION

29. For these reasons, the Court **GRANTS** the motion to dismiss, with prejudice, the counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing to the extent based on Water.io's failure to meet contractual milestones but **DENIES** the motion to dismiss these counterclaims in all other respects. In addition, the Court **GRANTS** the motion to dismiss the counterclaim for unfair or deceptive trade practices under section 75-1.1 and dismisses this counterclaim without prejudice.

**SO ORDERED**, this the 19th day of February, 2025.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases