An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-658

Filed 3 September 2025

Wake County, No. 21 CVD 010791-910

CONSOLIDATED DISTRIBUTION CORP., Plaintiff,

v.

ABEL McLAWHORN and SARAH WECHSBERG, Defendants.

Appeal by Defendants from judgment entered 31 October 2023 by Judge Ned W. Mangum in Wake County District Court. Heard in the Court of Appeals 23 April 2025.

> *Law Office of Matthew I. Van Horn, PLLC, by Matthew I. Van Horn, for Plaintiff–Appellee.*

> *The Armstrong Law Firm, PA, by L. Lamar Armstrong III, for Defendants–Appellants.*

MURRY, Judge.

Abel J. McLawhorn and Sarah S. Wechsberg (Defendants) appeal from the District Court's (trial court) judgment (1) joining Wechsberg as a co-defendant to the case, (2) finding for Consolidated Distribution Corporation (Plaintiff) that Defendants materially breached the parties' contract, and (3) awarding Plaintiff attorney's fees and costs. Plaintiff also requests sanctions against Defendants for raising this appeal.

For the reasons below, this Court (1) affirms the trial court's exercise of jurisdiction over Wechsberg, (2) affirms the trial court's conclusion regarding material breach, (3) vacates the trial court's award of attorney's fees and costs to Plaintiff and remanded for further findings on its reasonableness, and (4) denies Plaintiff's request for Rule 34 sanctions.

## I.  Background

Plaintiff specializes in the "design and overs[ight]" of "custom[-]cabinetry" installation and typically works with commercial clients. In May 2020, through its owner, John H. Whitford, Plaintiff contracted with McLawhorn to design and procure custom cabinets for Wechsberg, McLawhorn's girlfriend, as a personal favor and "professional courtesy." Across a series of emails between the parties, Plaintiff (through various authorized representatives) agreed to certain contractual terms undisputed on appeal: (1) that Plaintiff would design and deliver custom cabinets procured from a third-party vendor (2) for an $85/hour fee and 16.67% gross-margin markup on raw materials. After the core dispute arose, though, McLawhorn asserted in a 14 January 2021 text message that the terms also included "cash on delivery" (COD) of the custom cabinets.

The parties also disputed whether Wechsberg was a party to the agreement. Defendants did not dispute or object to this estimate at the time. The custom cabinets were delivered on 9 November 2020, and Plaintiff invoiced McLawhorn three days later for $14,371.73. McLawhorn did not dispute the price but objected to the

workmanship of the cabinets shortly after delivery, which Plaintiff sought to address by sending repairmen to Wechsberg's home. McLawhorn then delivered two checks totaling $11,500 to Plaintiff on 19 November 2020. Over 177 days after delivery, McLawhorn emailed Plaintiff stating that he had withheld the remaining payment under their agreement due to issues with the craftsmanship of the cabinets upon installation. Although Plaintiff agreed to fix the issues under warranty upon full payment or upon placing the remaining balance into an escrow account, Defendants hired third parties to complete the repairs at cost instead.

In August 2021, Plaintiff sued McLawhorn in small-claims court and won a judgment against him. Wechsberg was not a party to this initial proceeding. McLawhorn then appealed to the district court for a trial *de novo* on 13 August 2021 under N.C.G.S. § 7A-228. N.C.G.S. § 7A-228(a)–(b) (2023). Plaintiff filed its district court complaint against both McLawhorn and Wechsberg on 31 January 2022.[1] Defendants filed an answer denying Plaintiff's claims in relevant part and asserting a defense that Plaintiff "failed to state any claim upon which relief can be granted." (Citing N.C. R. Civ. P. 12(b)(6).) At a district court trial held on 18 September 2023,

---

[1] Defendants moved on 30 March 2022 to dismiss Plaintiff's *de novo* complaint for an alleged failure to join Wechsberg "[ ]as . . . a party . . . in . . . small[-]claims court"; the trial court granted this motion "*without prejudice*" on 1 July 2022. Two months later, Plaintiff amended its complaint to add Wechsberg as a co-defendant. Because "any claim . . . dismissed without prejudice" "upon order of [a] judge" "may be [re]commenced within one year" so long as the "new action [is] based on the same claim," these procedural maneuvers do not impact the trial court's jurisdiction of Wechsberg as analyzed further in Section III.A of this opinion. N.C. R. Civ. P. 41(a)(2).

Plaintiff testified that the cabinets had not yet been installed when he received partial payments totaling $11,500 from McLawhorn. McLawhorn testified that he withheld payment of $2,871.73 because of "design issues in the cabinet[s]" and "three missed measurements" in the cabinet boxes out of the entire array, "only two" of which he "discovered within days of delivery." Subsequently, the trial court entered a judgment for Plaintiff against Defendants on 30 October 2023. It found that McLawhorn operated as Wechsberg's agent during the course of the parties' agreement. The trial court ordered Defendants to pay Plaintiff $2,600 in damages plus interest, $9,500 for Plaintiff's "reasonable attorney's fees" under N.C.G.S. § 6-21.5, and $186 for other costs incurred by Plaintiff under N.C.G.S. § 6-21.1. Defendants timely appealed the trial court's ruling on 27 November 2023.

## II.  Jurisdiction

This Court has jurisdiction to hear Defendant's appeal of the trial court's judgment because it is the "final judgment of a district court in a civil action" regarding the contractual dispute between the parties. N.C.G.S. § 7A-27(b)(2) (2023).

## III.  Analysis

Defendants argue on appeal that the trial court erred (1) by entering judgment against Wechsberg without either personal or subject-matter jurisdiction over her, (2) by finding that Defendants materially breached the parties' contract in failing to pay Plaintiff the full contractual amount, and (3) by awarding attorney's fees and costs for Plaintiff against Defendants. Plaintiff also requests appellate sanctions

against Defendants under N.C. R. App. P. 34(a)(1), (3). We generally review the appeal of a bench-trial judgment for whether "competent evidence . . . support[s] the trial court's findings of fact and whether th[os]e findings support the conclusions of law and ensuing judgment." *Cartin v. Harrison*, 151 N.C. App. 697, 699 (2001) (quotation omitted). For the reasons below, this Court (1) affirms the trial court's exercise of jurisdiction over Wechsberg, (2) affirms the trial court's conclusion that Defendants materially breached the contract, (3) vacates the trial court's award of attorney's fees and costs to Plaintiff and remands for further findings on its reasonableness, and (4) denies Plaintiff's motion to impose Rule 34 sanctions against Defendants.

## A. Trial Court's Jurisdiction

First, Defendants argue that the trial court lacked subject-matter jurisdiction over Wechsberg. They dispute the trial court's personal jurisdiction over Wechsberg by stating that a "summons was never issued" to her for the complaint. But in response to Plaintiff's complaint, Wechsberg filed alongside McLawhorn an answer, affirmative defenses, and motion to dismiss. Even though Defendants asserted that "Wechsberg was n[either] a party to the small[-]claims action nor . . . a party to any contract with Plaintiff," their answer named Wechsberg as a co-defendant. As a result, she waived the defense of a lack of personal jurisdiction as a result. Thus, this Court affirms the trial court's exercise of personal jurisdiction over Wechsberg.

## B. Material Breach

Second, Defendants argue that the trial court erred by concluding that they breached their contract with Plaintiff. Defendants assert that no "findings or evidence" support the idea that they "were contractually obligated to pay in full before receiving full performance." As noted above, we review only the competency of the evidence that underlies the trial court's findings and whether competent evidence exists to support those findings that in turn support the trial court's derivative conclusions. *Cartin*, 151 N.C. App. at 699. Because Defendants both failed to remit timely payment and impliedly accepted Plaintiff's custom-made cabinets, this Court affirms the trial court's conclusion that they materially breached the contract at issue here.

### 1. UCC Applicability

To prevail in a contractual dispute, a plaintiff must establish (1) the existence of a valid contract between the parties and (2) a breach of its terms by the defendant. *Jackson v. Calif. Hardwood Co.*, 120 N.C. App. 870, 871, (1995). The Uniform Commercial Code (UCC) "applies to transactions in goods," N.C.G.S. § 25-2-102 (2023), which are "all things . . . movable at the time of identification to the contract," *id.* § 25-2-105. The UCC may also govern a "mixed contract," which "encompasse[s] both the sale of a good" and related services, if the contract's "predominant factor" so indicates. *Hensley v. Ray's Motor Co. of Forest City,* 158 N.C. App. 261, 265 (2003). If "the predominant factor . . . is the sale of goods with the provision of services incidentally involved, the UCC controls." *Id.* at 266. This " 'predominant factor' test"

considers factors including the contract's "language," the material's "intrinsic worth," and "the nature of the [supplier's] business." *Id.*

Here, the parties' agreement was for a sale of goods, custom cabinets, with the provision of design and delivery services incidentally involved. Plaintiff agreed to design custom cabinets for Defendants' home, procure the raw materials from a third-party contractor, and deliver the cabinets upon assembly. The factors listed above show that the parties' agreement was primarily for the sale of goods. *See Hensley*, 158 N.C. App. at 265.

*First*, McLawhorn initially asked Whitford for "any help [he] could provide" in finalizing the cabinetry and stating a "willing[ness] to pay for some design time." Whitford agreed to work "with [McLawhorn] based upon the hourly designer rate as discussed," which he confirmed as "$85/hour" for at least ten hours. Whitford also agreed to a "16.67%" gross margin on necessary construction materials. Plaintiff's representative then confirmed that "[i]nstallation and hardware [wa]s also not included in this price." *Second*, this same representative confirmed the cabinets' intrinsic value as ".833 [of the] raw cost" of the total construction materials. *Third*, Plaintiff typically provides installation services and oversight of third-party contractors in its commercial contracts but still agreed to design, manufacture, and deliver cabinets for Defendants in a residential setting. Plaintiff informed McLawhorn that the contract "was priced at cost as a professional courtesy"; McLawhorn likewise "made it very clear" to Plaintiff that the transaction "was a

personal endeavor." The parties' contract was outside of the "nature" of Plaintiff's usual business to provide services otherwise governable by common-law contract principles. *See Hensley*, 158 N.C. App. at 266; Restatement (Second) of Contracts § 367 cmt. b (A.L.I. 1981). These factors illuminate the primary purpose of the contract as a sale of goods governed by the UCC. Thus, the UCC governs the contract between the parties.

## 2.  Breach of Contract

Defendants assert that the trial court erred in part by concluding that they materially breached the agreement by failing to pay the full amount under the contract to Plaintiff. Defendants suggest that full payment requires "delivery of [the cabinets'] missing components" For the reasons below, this Court disagrees on both counts and thus affirms the trial court's conclusion on this point.

### a.  Contract Language

The contract did not include COD as a "material term." N.C.G.S. § 25-2-201 UCC cmt. 1 (2023). But the omission of "certain material terms . . . [does] not invalidate the contract" because our courts may "read into . . . [it] good faith requirements." *IWTMM, Inc. v. Forest Hills Rest Home*, 156 N.C. App. 556, 561 (2003). An otherwise "valid" contract may "omit[ ] or incorrectly state[ ]" an agreed-upon term, N.C.G.S. § 25-2-20(1), "if the parties . . . intended to make a contract" and the trial court can glean "a reasonably certain basis for giving an appropriate remedy," *id.* § 25-2-204(3). Absent a contrary term inferred by the court, the buyers

must render "payment . . . at the time and place at which the[y] . . . receive the goods." *Id.* § 25-2-310(a).

Defendants claim that "the parties agreed that the emails . . . constitute[ ] the sole contractual terms in the [a]greement" but also suggest that Plaintiff implicitly agreed to accept COD by not disputing McLawhorn's statement in the 22 February 2021 email that "[a]ny payment will be contingent upon delivery of missing components." None of the prior formative emails mention any modified payment arrangement whatsoever—much less this specific COD term. That former email exchange outlines the "sole contractual terms" of the parties' agreement. A postdated email and text message entirely unreferenced in the original contractual arrangement would impermissibly contradict the "complete and exclusive statement of the terms of the agreement." *Id.* § 25-2-202(b). Thus, Defendants owed Plaintiff a contractual obligation to remit full payment at the time of delivery.

### b. *Nonconformance & Acceptance*

Defendants both failed to reject the cabinets within a reasonable time after delivery and legally accepted them under the UCC. Ordinarily, a buyer who receives goods that "fail in any respect to conform to the contract" may "reject the whole," "accept the whole," or "accept any commercial . . . units and reject the rest." N.C.G.S. § 25-2-601(a)–(c). But if he chooses to reject the nonconforming goods, then the buyer must do so "within a reasonable time" after delivery and "seasonably notif[y] the seller" of the decision. *Id.* § 25-2-602(1). If the buyer accepts nonconforming goods

"with knowledge of a[ny] nonconformity," then he "cannot . . . revoke[ ]" that acceptance after the fact and "must pay at the contract rate for [those] goods." *Id.* § 25-2-607(1)–(2).

This Court's decision in *ITT-Indus. Credit Co. v. Milo Concrete Co.*, 31 N.C. App. 450, 461 (1976), controls our application of these principles here. In *ITT*, the defendant corporation purchased on 27 April 1973 a "TB80 concrete pump with certain attachments" from the plaintiff's original contract assignor. *Id.* at 452. The contract specified a sales price of $56,292.93, of which $40,049.99 remained unpaid as of the lawsuit. *Id.* The defendant remitted initial payments until late November of that same year, at which point he refused to further pay down the balance because those specified attachments "blew off frequently whenever the pump was being used." *Id.* The *ITT* Court "conclude[d] that [the defendant's] failure to . . . effective[ly] reject[ ]" the delivered TB80 pump "within the five[ ]month[s]" between May and November "constituted an acceptance." *Id.* at 461. The Court reasoned that the defendant "retained the pump for more than five months" with "ample time to effectively reject the goods, particularly since the pump's defects were observed at the beginning of its operation." *Id.* (citing N.C.G.S. § 25-2-608(2)).

Here, Defendants similarly had a "reasonable opportunity" to inspect the cabinets, N.C.G.S. § 25-2-606(1)(a), and contacted Plaintiff after the delivery only regarding minor "punch-list" issues without further immediate controversy. Defendants claim that they withheld full payment because "Plaintiff . . . [did] not

fully deliver[ ] the conforming goods," and that the UCC "does not allow Plaintiff to deliver nonconforming goods and demand full payment." But they retained the cabinets after delivery for over five months before expressing any rationale to Plaintiff for withholding partial payment. McLawhorn testified that he withheld payment because of "design issues in the cabinet[s]" and "three missed measurements" in the cabinet boxes out of the entire array, "only two" of which he "discovered within days of delivery." But the record shows no evidence of any seasonable Plaintiff notification. Defendants thus had ample time to reject the cabinets with full knowledge of their nonconformity in a five-month period analogous to the *ITT* defendant's own knowledge.

Through this same conduct, Defendants also "failed to . . . effective[ly] reject[ ]" the cabinets despite the opportunity to inspect them in detail. N.C.G.S. § 25-2-606(1)(b). They chose not to measure the cabinets before installing them and did not notify Plaintiff of any defects prior to installation. Through this conduct, Defendants acted "inconsistent with" Plaintiff's de jure "ownership" of the cabinets by installing them in Wechsberg's home. *Id.* § 25-2-606(1)(c). Defendants legally accepted the cabinets. Thus, this Court affirms the trial court's finding that Defendants materially breached the parties' contract by failing to either pay Plaintiff the full contractual amount or seasonably notify it of any cabinet defects.

### C. Attorney's Fees and Costs

Defendants further argue that the trial court improperly awarded Plaintiff

attorney's fees and costs under N.C.G.S. §§ 6-21.1,[2] -21.5. For the reasons below, this Court holds that the trial court did not abuse its discretion by awarding Plaintiff attorney's fees and costs but remands to the trial court for further findings of fact regarding the award's reasonableness. A trial court may award "attorneys' fees . . . [to] the successful party to an action" only "as . . . provided by statute." *Hicks v. Albertson*, 284 N.C. 236, 238 (1973). This Court reviews a trial court's award of attorneys' fees for abuse of discretion. *ACC Constr., Inc. v. SunTrust Mortg., Inc.,* 239 N.C. App. 252, 271 (2015). To abuse its discretion, a trial court must render a decision "manifestly unsupported by reason or [ ] so arbitrary that it could not have been the result of a reasoned decision." *Venters v. Albritton*, 184 N.C. App. 230, 234, (2007) (quotation omitted).

A trial court may grant attorney's fees to the party who prevails in a lawsuit with "a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." N.C.G.S. § 6-21.5. A justiciable issue is "a real and present" issue, "as opposed to [an] imagined or fanciful" one. *Sprouse v. N. River Ins. Co.*, 81 N.C. App. 311, 326 (1986). If a trial court "conclude[s] that it is statutorily authorized to award attorneys' fees," then it *must* document "findings regarding the [award's] reasonableness." *Ge Betz, Inc. v. Conrad*, 231 N.C. App. 214, 244 (2013). Some factors

---

[2] If the trial court taxed attorney's fees under § 6-21.1, the judgment is incorrect. Taxable attorney's fees under § 6-21.1 are only available under certain conditions in personal injury or property damage lawsuits and in some insurance lawsuits. This case is none of these.

it may consider "in assessing reasonableness" include the "time and labor expended, the skill required, the customary fee for like work," the attorney's "experience or ability," "the novelty and difficulty of the questions of law[,] the adequacy of the representation[,] the difficulty of the problems faced by the attorney[,] especially any unusual difficulties[,] . . . and the kind of case for which fees are sought and the result obtained." *Id.*

Here, the trial court awarded Plaintiff attorney's fees because it found "an absence of a justiciable issue of either law or fact raised by the Defendants in any of their pleadings." The trial court further found that "Defendants had no intention of paying the full amount owed to Plaintiff based on . . . [McLawhorn's] conduct." In support of its credibility determination, the trial court found that:

> McLawhorn . . . testified that he had not identified any defects or warranty issues at the time he withheld the $2,871.73[,] [t]hus rendering the amount withheld as arbitrary by the Defendants.
>
> . . . .
>
> McLawhorn put in writing the alleged bases for why Defendants withheld the balance of the invoice over 100 days after the cabinets had been delivered . . . .
>
> . . . .
>
> Plaintiff stood by agreeing to repair any alleged warranty items related to the cabinets so long as the amount owed by . . . Defendants was placed in an escrow account [but] Defendants did not agree to deposit the remaining balance in an escrow account.
>
> . . . .
>
> Defendants' acts to withhold the amount owed under the subject

- 13 -

invoice, $2,871.73, are without merit.

. . . .

Defendants have enjoyed the direct and indirect benefits of . . . Plaintiff's design and delivery of custom kitchen cabinets without having full[y] compensated . . . Plaintiff since [19 November 2020].

. . . .

Defendants' acts to withhold the amount owed under the subject invoice, $2,871.73, are without merit.

The trial court engaged in thoughtful and deliberate consideration of the evidence presented to make a finding of nonjusticiability and a related credibility determination regarding Defendants' intention of nonpayment. Far from being arbitrary or "manifestly unsupported by reason," the trial court's findings show that the award of attorney's fees was "the result of a reasoned decision." *See Venters*, 184 N.C. App. at 234. Thus, this Court holds that the trial court did not abuse its discretion in awarding Plaintiff attorney's fees.

But the record does not indicate findings regarding the "reasonableness" of the attorney's fees award. *See Conrad*, 231 N.C. App at 234. Although the trial court ordered Defendants to pay Plaintiff "for reasonable attorney's fees [under] N.C.G.S. § 6-21.5 in the amount of $9,500," no accompanying factual findings document the work performed by Plaintiff's attorney, the degree oof skill required, or other specifications related to reasonableness. *See id.* Similarly, no findings regarding reasonableness accompany the trial court's award of "$186.00[ ] in costs incurred by

. . . Plaintiff in this case [under] [N.C.G.S.] § 6-21.1."[3] Thus, we remand to the trial court for further findings regarding the reasonableness of the award against Defendants of Plaintiff's attorney's fees and costs.

## D. Sanctions

Finally, Plaintiff asks this Court to sanction Defendants under Rule 34(a)(1), (3). (Citing N.C. R. Civ. P. 34(a)(1), (3).) We decline to do so. An appellate court may impose sanctions against a party or an attorney who raises an appeal "[un]grounded in fact," "[un]warranted by existing law," "grossly lacking" in "propriety," or otherwise *grossly* violative of appellate rules and requirements. N.C. R. App. P. 34(a)(1), (3). Sanctions may include "dismissal of the appeal," "monetary damages" including attorney's fees, or other sanctions "deemed just and proper" by the appellate court. *Id.* 34(b). This appeal is neither "frivolous" nor in gross violation of this Court's requirements. It is a fairly typical contractual dispute between litigants over an unsatisfactory home renovation, which does not meet this Court's typically high bar for *sua sponte* sanctions. *Contra*, *e.g.*, *Shebalin v. Shebalin*, 284 N.C. App. 86, 91 (2022) (levying monetary sanctions for "plaintiff['s] . . . repeated[ ] and baseless[ ]" appeals of disputed trial-court order "despite . . . [its] interlocutory nature being [facially] apparent"); *Medlin v. N.C. Spec'y Hosp., LLC*, 233 N.C. App. 327, 341 (2014)

---

[3] Costs are not properly awarded under § 6-21.1 here. Section 6-20 is the correct statute for discretionary costs in civil actions, as allowed by § 7A-305(d). *See* N.C.G.S. § 6-20 (discretionary costs); *id.* § 7A-305(d) (limitations on costs).

(sanctioning defendant for "cost of plaintiff's attorney's fees" because "most of . . . [its] arguments lack[ed] legal or factual basis" on appeal); *State v. Castaneda*, 196 N.C. App. 109, 113 (2009) (acknowledging dismissibility of criminal defendant's appeal as sanction for " 'gross' and 'substantial' " failure to minimally specify "differ[ing] bases for error" in brief). Thus, this Court denies Plaintiff's request for Rule 34 sanctions.

## IV.    <u>Conclusion</u>

For the reasons discussed above, this Court (1) affirms the trial court's exercise of jurisdiction over Wechsberg, (2) affirms the trial court's judgment as to its conclusions regarding material breach of contract, (3) vacates and remands the trial court's award of attorney's fees and costs to Plaintiff for further findings on the reasonableness of the award, and (4) denies Plaintiff's request for Rule 34 sanctions.

AFFIRMED IN PART; VACATED AND REMANDED IN PART; DENIED IN PART.

Judges COLLINS and FREEMAN concur.

Report per Rule 30(e).